This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.
NO. 29,874

**GABRIEL DEAN PEABODY**,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Thomas J. Hynes, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Works LLC
John A. McCall
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

Defendant appeals his conviction for driving while intoxicated (DWI) contrary to NMSA 1978, Section 66-8-102(D)(3) (2005) (amended 2010). Defendant raises four issues on appeal: (1) the arresting officer lacked reasonable suspicion to stop Defendant and the stop was an unreasonable intrusion into Defendant's right to privacy; (2) certain evidence was admitted during Defendant's preliminary hearing and at trial in violation of the Confrontation Clause of the Sixth Amendment; (3) Defendant's right to equal protection was violated when the State exercised a peremptory challenge of a Native American panel member during jury selection; and (4) the evidence was insufficient to convict Defendant of DWI.

**BACKGROUND**

The jury convicted Defendant of DWI without being asked to specify which theory of "operating" a motor vehicle formed the basis for its verdict, (1) driving, or (2) actual "physical control" whether or not the vehicle is moving. Defendant has appealed his conviction. Because this is a memorandum opinion and because the parties are familiar with the factual and procedural background in this case, we need not provide a detailed summary here. To the extent necessary, the relevant background information will be referred to in the discussion below.

**DISCUSSION**

**I.     Reasonable Suspicion and Defendant's Right to Privacy**

Defendant argues that his rights under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution were violated because Deputy Nyce did not possess facts sufficient to detain Defendant at the time of the stop and Defendant's expectation of privacy outweighed Deputy Nyce's interest in enforcing DWI laws. Defendant contends that a concerned citizen's anonymous tip, without corroboration, could not provide sufficient information for Deputy Nyce to form reasonable suspicion for the investigative seizure. As such, Defendant asserts the district court erred when it refused to suppress the evidence obtained as a result of the investigative stop.

**A.    Standard of Review**

"A review of the suppression of evidence is a mixed question of law and fact. We consider the facts in the light most favorable to the prevailing party and defer to the district court's findings of fact if those findings are supported by substantial evidence." *State v. Anaya*, 2008-NMCA-020, ¶ 5, 143 N.M. 431, 176 P.3d 1163 (citation omitted). The standard of review for an appeal from an order denying suppression also requires an application of law to the facts, which we review de novo. *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579. The facts in this case are not in dispute; therefore, we review only the legal conclusions made by the district court. *State v. Contreras*, 2003-NMCA-129, ¶ 4, 134 N.M. 503, 79 P.3d 1111.

3

**1. The Investigation and Seizure of Defendant**

Defendant was already parked next to a gas pump at a Shell station when Deputy Nyce located him. Based on the "attempt to locate" dispatch, Deputy Nyce stopped his vehicle and approached Defendant to initiate an investigation. At that point, an investigative seizure occurred. *Id.* ¶ 5 ("A brief detention for investigatory purposes is a seizure entitled to Fourth Amendment protections."). While all seizures must be reasonable, "[a] police officer may . . . approach a person [to] investigat[e] possible criminal behavior even though there is no probable cause to make an arrest." *Id.* (internal quotation marks and citation omitted). To justify a brief investigatory stop, the officer must be able to articulate specific facts which, under the totality of the circumstances, create a "reasonable suspicion that the individual in question is engaged in or is about to be engaged in criminal activity." *Id.* "Reasonable suspicion is dependent on both the content of information possessed by the police and its degree of reliability." *Id.* Therefore, when an anonymous tip provides the basis for reasonable suspicion, it must generally be either sufficiently reliable or corroborated. *Id.* A tip by an anonymous concerned citizen that "observed the details personally" is generally considered reliable, even more reliable than a police informant or a crime-stoppers informant. *Id.* ¶¶ 10, 12. We also recognize that "law enforcement officers

4

can make an investigatory stop of a vehicle based on a contemporaneous tip of erratic driving that accurately describes a given vehicle, even if the officers did not witness the erratic driving." *Id.* ¶ 9.

In *Contreras*, an anonymous concerned motorist informed the 911 operator "of a possible drunk driver who was driving a grey van, towing a red Geo, and driving erratically." *Id.* ¶ 2. This information was passed along by dispatch, and two deputies that were on patrol found the vehicle described and initiated a traffic stop. *Id.* Neither deputy observed erratic driving before stopping the vehicle. *Id.* This Court determined that the minimal intrusion of a brief investigatory stop was reasonable under the totality of the circumstances because "[t]he facts . . . allow the inference that the anonymous caller was a reliable concerned motorist; the information given was detailed enough for the deputies to find the vehicle in question and confirm the description; and the caller was an apparent eyewitness to the erratic driving." *Id.* ¶ 21.

*Contreras* is almost identical to the present case with one exception: Deputy Nyce did not need to initiate a traffic stop because Defendant had stopped to refuel his truck at the Shell station. In both cases, callers initially informed dispatch that they suspected a driver of driving while under the influence, and in both cases an officer easily identified the suspect vehicle based on the information provided. In this case, like in *Contreras*, the motorist was a concerned citizen who personally observed the

erratic driving. Even though Deputy Nyce could not corroborate Defendant's erratic driving, *Contreras* explained that "there may be circumstances in which the danger alleged in an anonymous tip might be so great as to justify a search without a specific showing of reliability[.]" *Id.* ¶ 6. Such a circumstance is raised when dealing with "the possible threat to public safety that a drunk driver poses[.]" *Id.* ¶ 21 Therefore, since the truck matched the "attempt to locate" dispatch, Deputy Nyce was justified in approaching Defendant at the Shell station. The minimal intrusion of this brief investigation and questioning of Defendant was justified without the need for additional independent observation or verification of improper driving. *Id.*

Defendant argues that *Contreras* is not controlling because of the fact that his truck was not moving at the time of Deputy Nyce's investigation at the Shell station and this encounter violated his expectation of privacy. Because Defendant was already stopped to refuel at the Shell station when police located him, Defendant argues that "[t]he exigency of a possible threat to public safety that the *moving* car and drunk driver posed in *Contreras* is distinguished." Therefore, Defendant argues that the proper legal analysis in this case requires "the assertion of illegality [to also] be accurate." We disagree and have already explained that "it is the imminent threat to public safety that distinguishes these [driving while under the influence] cases" from the authority relied upon by Defendant. 2003-NMCA-129, ¶ 15. As such, the issue

is whether Defendant continued to be an imminent threat to public safety when he pulled his truck over to refuel on his way home from work.

Even though his truck was not moving when Deputy Nyce located him to investigate possible erratic driving, Defendant still posed an immediate threat to public safety. Deputy Nyce could reasonably infer that Defendant briefly stopped driving for the purpose of refueling his truck and, as Defendant stated his intention to continue driving home, Deputy Nyce could reasonably infer that Defendant would continue driving once his stop at the Shell station was completed. Defendant's statement of his intent to continue driving home was sufficient confirmation that he was a continuing threat to public safety. As such, reasonable inferences from the evidence support Deputy Nyce's conclusion that the exigency and threat to public safety posed by Defendant remained imminent. We conclude that the investigative seizure was reasonable under the totality of the circumstances and affirm the district court's denial of Defendant's motion to suppress.

**II.    Defendant's Right of  Confrontation**

On appeal, Defendant also raises two arguments regarding his rights under the Confrontation Clause of the Sixth Amendment. First, Defendant argues that the district court improperly refused to quash the criminal information issued against him after the magistrate court allowed the anonymous 911 caller's description of

Defendant's driving to be submitted through the testimony of Deputy Nyce at the preliminary hearing. Second, he asserts that the district court improperly admitted evidence at trial in violation of the Confrontation Clause. "Claimed violations of the Confrontation Clause are questions of law which we review de novo." *State v. Lopez*, 2011-NMSC-035, ¶ 10, 150 N.M. 179, 258 P.3d 458.

**A.     The Application of the Confrontation Clause During Preliminary Hearings**

Defendant claims that during the preliminary hearing held before the San Juan County Magistrate Court on April 2, 2009, his objection to certain testimony given by Deputy Nyce was improperly denied. He further asserts that the objectionable testimony by Deputy Nyce involved a report to dispatch by a motorist in Colorado regarding Defendant's driving behavior. Based upon this testimony, Defendant filed a motion in the district court to strike the criminal information filed against Defendant. Defendant now argues that the Confrontation Clause applies to the testimony provided by Deputy Nyce at the preliminary hearing but he fails to identify any ruling issued by the district court addressing this motion to strike.

The Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. Citing *State v. Rivera*, 2008-NMSC-056, ¶ 19, 144 N.M. 836, 192 P.3d 1213, the State contends that this language mandates that the Confrontation

8

Clause applies only to testimony in "criminal prosecutions" and should be considered a trial right, not a pretrial right. Defendant contends that the Confrontation Clause applies to testimony provided at a preliminary hearing in New Mexico and cites the Supreme Court's decision in *Mascarenas v. State*, 80 N.M. 537, 458 P.2d 789 (1969). For the purposes of this Opinion, we shall presume without deciding that the Confrontation Clause applies to testimony provided at the preliminary hearing. We now resolve Defendant's Confrontation Clause argument on other grounds.

Defendant's Confrontation Clause argument fails on several grounds. First, the information provided by a citizen 911 caller to dispatch is generally considered nontestimonial and does not implicate the Confrontation Clause. *See State v. Soliz*, 2009-NMCA-079, ¶ 13, 146 N.M. 616, 213 P.3d 520 (holding under the facts of the case that a 911 call was nontestimonial), *cert. granted*, 2009-NMCERT-007, 147 N.M. 363, 223 P.3d 360; *see also State v. Ortega*, 2008-NMCA-001, ¶¶ 14, 28, 143 N.M. 261, 175 P.3d 929 (explaining that a phone call to a 911 operator is generally nontestimonial because the purpose of the phone call is to enable police assistance to meet an ongoing emergency), *overruled on other grounds by State v. Mendez*, 2010-NMSC-044, ¶ 40, 148 N.M. 761, 242 P.3d 328. Second, Defendant's brief has failed to address the four factors required under *Soliz* to determine whether the 911 call referenced by Deputy Nyce should be recognized as testimonial rather than

9

nontestimonial. *See Soliz*, 2009-NMCA-079, ¶ 13 ("[A] statement is likely nontestimonial if (1) the individual is describing events as they are actually happening rather than describing past events; (2) the individual is facing an ongoing emergency; (3) when viewed objectively, the elicited statements are necessary to resolve a present emergency rather than simply to learn what had happened in the past; and (4) the individual's statements . . . were provided over the phone in an environment that was neither tranquil nor safe."); *see also State v. Gee*, 2004-NMCA-042, ¶ 25, 135 N.M. 408, 89 P.3d 80 (noting that issues not briefed are deemed abandoned). Third, Defendant's brief has failed to provide proper citations to the record regarding the evidence and rulings necessary to address his Confrontation Clause argument. *See State v. Boergadine*, 2005-NMCA-028, ¶ 30, 137 N.M. 92, 107 P.3d 532 ("Without an appropriate cite to the record, we do not comb the record to find whether an issue was properly preserved. As such, we need not address this contention." (citation omitted)). Fourth and finally, Defendant's failure to obtain a ruling from the district court on the issue of whether Deputy Nyce's testimony at the preliminary hearing required the criminal information to be stricken constitutes a waiver that cannot now be addressed on appeal. *See State v. Gomez*, 1997-NMSC-006, ¶ 14, 122 N.M. 777, 932 P.2d 1 ("A trial is first and foremost to *resolve* a complaint in controversy, and the rule [of preservation] recognizes that a trial court can be expected to decide only

the case presented under issues fairly invoked."). As a result, we determine that Defendant failed to establish that his rights under the Confrontation Clause to confront a witness against him were violated during the preliminary hearing held before the magistrate court.

**B.     The Application of the Confrontation Clause During Trial**

Defendant also argued that the district court violated his right to confront witnesses against him at trial in violation of the Confrontation Clause. This argument was based upon the admission of the laboratory blood draw form stating the reasons Defendant's blood was tested as "[p]ossible [DWI]." Defendant argues that the admission of the blood draw form violated his right to confront witnesses against him because it essentially provided testimony to the jury that the concerned citizen anonymous caller had described Defendant's driving as a "[p]ossible DWI." The State contends that we need not address the merits of Defendant's Confrontation Clause argument because he failed to preserve the claim. We agree. We begin by reviewing the events at trial.

During direct examination of an emergency technician with the San Juan County Medical Center, the State elicited testimony regarding the blood draw administered to Defendant and laid the foundation to enter the blood draw form into evidence. The blood draw form contained the specific notation that Defendant

11

complains of on appeal. Under "Reason Suspect Stopped," the document notes: "Attempt to Locate for Possible [DWI]." Defense counsel did not object when this exhibit was admitted (Exhibit 1) and the State published the exhibit to the jury.

The State again used Exhibit 1 during its direct examination of Deputy Aeschlimann. Again, Exhibit 1 was shown to the jury without objection from defense counsel. However, toward the end of direct examination of Deputy Aeschlimann, defense counsel requested a bench conference. Defense counsel complained of the notation on Exhibit 1, objected on the basis of relevance, and made a motion for mistrial. A recess was taken and the trial judge stated that when the State offered Exhibit 1, Defendant did not object. Defense counsel explained that he had missed the notation and assumed the State would have redacted the document. He argued that it was hearsay and in violation of the Confrontation Clause. The district court explained that the notation was different from the erratic driving discussed at pretrial and ruled that the notation on Exhibit 1 was not prejudicial.

The record reflects that Exhibit 1 was twice shown to the jury without objection from Defendant. As such, Defendant failed to timely alert the district court to the alleged Confrontation Clause issue regarding the information contained in Exhibit 1. *See State v. Lopez*, 2008-NMCA-002, ¶ 8, 143 N.M. 274, 175 P.3d 942 ("The objection must be timely and must specifically apprise the district court of the claimed

error, resulting in an intelligent ruling from the district court."); *State v. Garcia*, 2005-NMCA-042, ¶ 39, 137 N.M. 315, 110 P.3d 531 (holding the defendant's objections to testimony after it had already been heard were untimely and failed to preserve the issue for review on appeal "[b]ecause the horse was already out of the barn" (internal quotation marks and citation omitted)); *State v. Neswood*, 2002-NMCA-081, ¶ 18, 132 N.M. 505, 51 P.3d 1159 (holding an objection untimely when raised after the testimony has been heard, such that the issue would not be considered on appeal). As a result, we will not address this argument further as Defendant's objection was untimely.

**III.     The State's Use of Peremptory Challenges**

Defendant's third argument is that the State's peremptory challenge against a prospective juror of Native American descent was racially motivated and violated his constitutional right to equal protection. "It is well established that the State may not, during the jury selection process, use its peremptory challenges to exclude otherwise unbiased and well-qualified individuals solely on the basis of their race." *State v. Martinez*, 2002-NMCA-036, ¶ 9, 131 N.M. 746, 42 P.3d 851. Exclusions on the basis of race "violate the equal protection rights of both the defendant and the prospective jurors." *Id.*

New Mexico district courts follow the three-step analysis outlined in *Batson v.*

13

*Kentucky*, 476 U.S. 79, 94-95 (1986), to determine whether the State has improperly discriminated on the basis of race in using peremptory challenges. *State v. Jones*, 1997-NMSC-016, ¶ 3, 123 N.M. 73, 934 P.2d 267; *Martinez*, 2002-NMCA-036, ¶ 10. First, a defendant must make a prima facie showing of racial discrimination. *Jones*, 1997-NMSC-016, ¶ 3. Second, the State must articulate a racially neutral explanation for its challenges. *Id.* Third, if the district court accepts the State's explanation, the defendant must show that the reason given is actually a pretext for a racially discriminatory intent. *Id.* In reviewing a claim of racial discrimination in the use of peremptory challenges, we defer to the district court's factual findings, but we review its legal conclusions de novo. *Martinez*, 2002-NMCA-036, ¶ 21.

In the present case, the State used a peremptory challenge on a juror of Navajo descent. Noting that both this juror and the Defendant were Native Americans, Defendant objected. The record indicates, however, that the district court made no findings on whether Defendant established the first step of the *Batson* inquiry. *See State v. Jim*, 107 N.M. 779, 781, 765 P.2d 195, 197 (Ct. App. 1988) ("In order to establish a prima facie case, [the] defendant must show that: (1) [the prospective juror] is a member of a cognizable racial group; (2) the state has exercised its peremptory challenges to remove members of that group from the jury panel; and (3) these facts and any other relevant circumstances raise an inference that the state used its

14

challenges to exclude members from the panel solely on account of their race.").

Defense counsel merely challenged the strike under *Batson*. At that point, the prosecutor offered a racially neutral explanation for the strike. Thus, the district court had no opportunity to determine whether Defendant had made a prima facie showing of intentional discrimination and we proceed with the next step of the analysis. *See State v. Gerald B.*, 2006-NMCA-022, ¶¶ 31-32, 139 N.M. 113, 129 P.3d 149 (explaining that the preliminary issue of whether the defendant met the burden of presenting a prima facie case becomes moot when the district court proceeds past the first step of the *Batson* analysis without making any findings).

In the second step of the *Batson* analysis, the burden shifts to the State to articulate a racially neutral explanation for the peremptory challenge. *Gerald B.*, 2006-NMCA-022, ¶ 33. At this point, the focus of the inquiry "is the facial validity of the prosecutor's explanation." *Jones*, 1997-NMSC-016, ¶ 3 (internal quotation marks and citation omitted). The State explained that it exercised its challenge because the prospective juror had listed no job history in his questionnaire. Because challenging a juror for failure to list a job history in his questionnaire is a racially neutral, specific reason, the State met its step-two burden. *See id.* ¶ 4 (finding that failure to make eye contact and lack of assertiveness were facially valid explanations for the state's peremptory challenge); *State v. Begay*, 1998-NMSC-029, ¶ 13, 125

15

N.M. 541, 964 P.2d 102 (finding the state's explanation that a prospective juror was "not very responsive on the jury questionnaire and had displayed unfavorable body language" facially valid).  The district court could have found the explanation unpersuasive, but it did not do so. *See Jones*, 1997-NMSC-016, ¶ 4.

Therefore, step three of the *Batson* analysis required Defendant to adduce rebuttal evidence to refute the State's explanation or otherwise prove the prosecutor had intentionally discriminated.  *See id.*; *Begay*, 1998-NMSC-029, ¶ 14 ("A peremptory challenge that is found to be valid on its face stands unless the defendant comes forward with a refutation of the stated reason—e.g., by challenging its factual basis-or proof of purposeful discrimination by the prosecutor.").  The record indicates that Defendant failed to challenge the proffered reason for striking the prospective juror.  Defense counsel responded to the State's proffered reason by stating simply that he did not believe that no job history qualified.  Defendant failed to meet his burden of producing evidence that either the prospective juror was, in fact, employed or that the State was using his lack of job history as a mere pretext for discrimination. Because we review the action of the district court under a deferential standard, we conclude that the trial court was in the best position to evaluate the State's sincerity and to determine it did not purposefully discriminate in striking the juror.  Based on the foregoing facts, the district court did not abuse its discretion in concluding that the

16

State provided a non-discriminatory, race-neutral explanation for its peremptory challenge. As such, we conclude that Defendant failed to carry his burden of showing sufficient evidence to support a finding of discriminatory intent and his equal protection claim fails.

**IV.    Sufficiency of the Evidence After the *Sims* Decision**

Defendant's final argument is that the evidence was insufficient to convict him of DWI. Specifically, Defendant argues that under the holding in *State v. Sims,* 2010-NMSC-027, 148 N.M. 330, 236 P.3d 642, the evidence was insufficient to prove that he was in actual physical control of his truck.

**A.    Standard of Review**

We review the evidence to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Under this standard, we view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict. *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176; *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994).

**B.    Evidence of DWI by Driving a Vehicle**

The decision in *Sims* did not change the requirements for convicting a driver of DWI when the person is driving the vehicle. *Sims*, 2010-NMSC-027, ¶ 24. In *Sims*, the only issue presented for review was whether the defendant was in actual physical control of his vehicle while it was parked on the side of the roadway. *Id.* ¶¶ 1-3. "Had the police officer or other witnesses observed Defendant behind the steering wheel of a moving vehicle at or near the time of his apprehension, the State would not have to rely on 'actual physical control' to prove that Defendant was DWI." *Id.* ¶ 3; *State v. Mailman*, 2010-NMSC-036, ¶¶ 24-28, 148 N.M. 702, 242 P.3d 269 (recognizing that the factfinder may infer that the accused drove while intoxicated based on circumstantial evidence that includes "the accused's own admissions, the location of the vehicle next to the highway, or any other similar evidence that tends to prove that the accused drove while intoxicated"). Defendant's brief did not challenge the sufficiency of the evidence regarding whether Defendant's conviction was based upon the act of driving the vehicle prior to his stop to refuel at the Shell station.

In the present case, Deputy Nyce located Defendant's vehicle within minutes of receiving the "attempt to locate" dispatch. Defendant admitted that he was the driver of the truck and the only person in the truck. Additionally, Defendant admitted that he had been driving his truck shortly before Deputy Nyce located it at the Shell

18

station. Defendant also said that he came from work and was planning on driving home from the Shell station. Based upon the reasonable inferences to be drawn from the evidence, the State presented sufficient evidence for Defendant to be convicted of DWI based upon his acts of driving prior to his stop for refueling at the Shell station. Because Defendant has not challenged the sufficiency of this evidence regarding the driving of his truck prior to stopping at the Shell station, *Sims* would still allow a jury to convict Defendant of DWI for this specific behavior.

**C.     The Essential Elements of Actual Physical Control Established by *Sims***

Our New Mexico Supreme Court recently clarified the requirement of actual physical control in *Sims* and *Mailman*. In *Sims*, our Supreme Court recognized that a defendant could continue to be convicted of DWI under Section 66-8-102(A) based on actual physical control of a vehicle without actually driving the vehicle. *Sims*, 2010-NMSC-027, ¶ 3. Also recognizing that "an intoxicated individual may exercise a great deal of control over a vehicle, yet still pose little danger to . . . the public[,]" our Supreme Court added a new element to a DWI charge that is based on actual physical control. *Id.* ¶¶ 25, 26. *Sims* now requires that "a fact finder cannot simply assume or speculate that the individual in question might sometime in the future commence driving his or her vehicle." *Id.* ¶ 4. Rather, actual physical control requires proof not only of control over the vehicle, but also of *a general intent to drive so as*

19

*to endanger any person. Id.* ¶¶ 24, 26. This change is applicable to the present case because it was on direct appeal at the time *Sims* was decided. *Mailman*, 2010-NMSC-036, ¶ 9 ("We take this opportunity to clarify that our holding in *Sims* applies prospectively to all cases pending in the trial court and on direct appeal as of the date that *Sims* was filed, June 8, 2010.").

Similar to *Mailman*, the jury in the present case should have been instructed that actual physical control also required Defendant to have a general intent to drive so as to endanger any person. Failure to include the correct general intent instruction established in *Sims* could require a reversal of Defendant's DWI conviction and a possible remand for a new trial if insufficient evidence exists to support the elements of DWI by actual physical control. *See Mailman*, 2010-NMSC-036, ¶¶ 9, 13-21 (taking "a fresh look at the issue presented" to determine whether the evidence was sufficient to prove DWI based on actual and physical control under the new analysis in *Sims*). As a result, we now review the sufficiency of the evidence to determine whether it would support a DWI based upon Defendant's physical control of his truck.

We conclude that the evidence was sufficient for the State to meet its burden of proof in this case and establish actual physical control under the new *Sims* analysis. Under the totality of the circumstances presented in this case, Defendant was more than a mere passive occupant of his truck. A concerned citizen motorist saw his truck

being driven on the highway and reported erratic driving prior to Defendant's encounter at the Shell station. Defendant admitted that he was the driver of the truck and the only person in the truck. Defendant was located at the gas pump of the Shell station. He showed signs of intoxication and refused to perform the requested field sobriety tests. Most importantly, Defendant told Deputy Nyce that he came from work and was planning on driving home from the Shell station. As a result, the fact that Deputy Nyce located Defendant standing in front of his truck by the time he pulled his police unit over to investigate the "attempt to locate" dispatch is not dispositive. Sufficient evidence was presented to establish that Defendant was in actual physical control of his truck with an intent to drive home from the Shell station. *See Garcia*, 2005-NMSC-017, ¶ 20 (allowing a jury to draw reasonable inferences from the evidence to reach its verdict).

There was sufficient evidence for the jury to legally convict Defendant based upon both legal theories presented on the general jury instruction, including evidence of general intent to drive so as to endanger any person as established in *Sims*. *See Mailman*, 2010-NMSC-036, ¶ 12 ("a conviction under a general verdict must be reversed where it is based on more than one legal theory and at least one of those theories is legally invalid."); *see also State v. Olguin*, 120 N.M. 740, 740-41, 906 P.2d 731, 731-32 (1995) (holding that due process does not require a general verdict of

21

guilt to be set aside so long as one of the alternative bases for conviction is supported by sufficient evidence and the other theories are not legally inadequate).  Accordingly, it is unnecessary to remand for a new trial and we affirm.

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's conviction for DWI.

**IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**RODERICK T.  KENNEDY,  Judge**

_____

**MICHAEL E.  VIGIL, Judge**