This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38270

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MORGAN EUGENE QUARLES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Following a jury trial, Morgan Eugene Quarles (Defendant) was found guilty of armed robbery, contrary to NMSA 1978, Section 30-16-2 (1973), conspiracy to commit armed robbery, contrary to NMSA 1978, Section 30-28-2 (1979), and resisting, evading, or obstructing an officer, contrary to NMSA 1978, Section 30-22-1(B) (1981). Defendant appeals these convictions. On appeal, Defendant argues (1) the district court abused its discretion by dismissing his motion to suppress as untimely filed pursuant to a local rule, (2) the Victim's identification of Defendant during trial violated his due process rights under the New Mexico Constitution, (3) alternatively, the identification of Defendant

should have been excluded under Rule 11-403 NMRA, and (4) the district court should have declared a mistrial. Unpersuaded, we affirm Defendant's convictions.

**BACKGROUND**

**{2}**     On February 3, 2016, Victim[1] was walking on Colombia Drive near the University of New Mexico (UNM) when someone pulled on his shoulder and robbed him at gunpoint. The robber took Victim's cell phone and blue Nike backpack. After robbing Victim, the robber got into the passenger seat of a nearby Chevrolet truck, and the truck drove away. After the truck drove away, Victim used a bystander's cell phone to call the police. During the call, Victim provided the police with the truck's license plate number. Victim, using the Find My iPhone application, located his phone, and he gave its location to the police. Initially, Victim described the robber as a six-foot-tall African American male with dreadlocks. Twelve days after he was robbed, Victim called police to tell them that, after viewing a news report on a local television station that described Defendant as a person of interest in several robberies, including Victim's own robbery, he recognized Defendant as the man who robbed him. After viewing this news report, Victim changed his description of the robber's ethnicity and hairstyle. Victim testified at trial that based on the news report, Victim believed Defendant was the person who robbed him and notified the police of this fact. He believed this because Defendant "looked really familiar" and the way that a different victim was robbed was similar to the way Victim was robbed.

**{3}**     At the time Victim was robbed, Albuquerque Police Department Detective Koury Church was investigating several robberies near the UNM and Central New Mexico Community College (CNM) campuses that were similar to the robbery of Victim. Based on the investigation, Detective Church and other police officers arrested an accomplice of Defendant at Defendant's apartment complex. At that time, police also attempted to arrest Defendant at this apartment, but Defendant jumped out of a second-story window of the apartment building and fled. Defendant was arrested shortly afterward on the roof of a nearby building.

**{4}**     On the day of Defendant's arrest, police obtained a search warrant for Defendant's apartment. During the search of the apartment, police recovered Victim's blue Nike backpack. On February 15, 2016, Victim called Detective Church to tell him that he had seen Defendant and the other men police arrested in connection with this string of robberies on the news. To avoid tainting the identification of Defendant because of what Victim had viewed during the news report, Detective Church did not ask Victim to view a photo array to identify his assailant.

---

[1]In this opinion, Victim is the eyewitness who identified Defendant during trial as the individual who robbed him, based on circumstances Defendant contends on appeal were suggestive. Although we do not refer to Victim as the "witness" or "eyewitness," we want to be clear that Victim is the eyewitness whose identification of Defendant as the perpetrator is at issue here, given that Defendant was tried on charges related to two other alleged victims during the same proceedings.

**{5}** As a result of its investigation, the State charged Defendant with three counts of armed robbery, conspiracy to commit armed robbery, and several other offenses. Before trial, Defendant moved to suppress Victim's identification. However, the district court dismissed the motion without reaching its merits because the district court found that the motion was untimely filed contrary to the scheduling order issued pursuant to LR 2-308 NMRA (the local rule). At trial, Defendant was convicted of armed robbery, conspiracy to commit armed robbery, and resisting, evading, or obstructing an officer. This appeal followed.

## DISCUSSION

**{6}** Defendant argues (1) it was an abuse of discretion for the district court to deny his motion to suppress Victim's out-of-court identification of him after watching the news on grounds that it was not timely filed; (2) the "tainted" in-court identification of Defendant by Victim violated Article II, Section 18 of the New Mexico Constitution; (3) the prejudicial effect of Victim's identification of Defendant substantially outweighed its probative value, violating Rule 11-403; and (4) that the district court should have granted a mistrial when the prosecution showed the jury a cell phone unrelated to this case. We address each of these arguments in turn.

### I. The District Court Appropriately Denied Defendant's Motion to Suppress on Timeliness Grounds

**{7}** First, Defendant argues that it was an abuse of discretion for the district court to deny his motion to suppress on timeliness grounds. Defendant filed a motion seeking to suppress Victim's out-of-court identification of him as the perpetrator of Victim's robbery after Victim viewed a news story in which Defendant was implicated in the robbery of Victim. We are unpersuaded. Denial of a motion on timeliness grounds is reviewed for abuse of discretion. *See State v. Smallwood*, 2007-NMSC-005, ¶ 12, 141 N.M. 178, 152 P.3d 821. Here, the district court denied Defendant's motion to suppress because it was untimely filed pursuant to both the scheduling order and the local rule. Under applicable precedent, the district court's decision to deny the motion on this ground was appropriate. *See State v. Vialpando*, 1979-NMCA-083, ¶ 6, 93 N.M. 289, 599 P.2d 1086 (stating that a motion to suppress could have properly been denied on untimeliness grounds); *State v. Helker*, 1975-NMCA-141, ¶ 7, 88 N.M. 650, 545 P.2d 1028 ("[W]e hold that rules of criminal procedure can put a time limitation on the exercise of a constitutionally protected right."); *see also City of Santa Fe v. Marquez*, 2012-NMSC-031, ¶ 28, 285 P.3d 637 (noting that Rule 5-212(C) NMRA requires that motions to suppress be filed sixty days before trial).

**{8}** Thus, because Defendant failed to file his motion to suppress within the deadline set by the district court's scheduling order and the local rule, it was not an abuse of discretion for the district court to deny this motion on those grounds. *See Helker*, 1975-NMCA-141, ¶ 7.

### II. The Eyewitness Identification Did Not Violate the New Mexico Constitution

**{9}** Defendant argues that Victim's out-of-court identification was tainted by the suggestive news report he viewed. Therefore, the in-court identification of Defendant by Victim was also tainted and its admission violated Defendant's right to due process. To remedy this due process violation, Defendant asks that we extend our Supreme Court's recent holding in *State v. Martinez* to instances where there is no state action. 2021-NMSC-002, ¶¶ 70, 79, 478 P.3d 880 (holding that "if a witness makes an identification of a defendant as a result of a police identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification, the identification and any subsequent identification by the same witness must be suppressed"). We decline to do so for the reasons that follow.

### A.    Standard of Review

**{10}** The admission of an identification of the defendant implicates his right to due process. *See State v. Ramirez*, 2018-NMSC-003, ¶ 29, 409 P.3d 902. Because Defendant argues that the out-of-court identification made by Victim violated his right to due process, our review is de novo. *See State v. Belanger*, 2009-NMSC-025, ¶ 8, 146 N.M. 357, 210 P.3d 783 ("This appeal implicates . . . the Fourteenth Amendment right to due process of law, including the right to a fair trial, and therefore our review is de novo.").

**{11}** The federal standard for pretrial identification evidence obtained by police procedure was established in *Manson v. Brathwaite*, 432 U.S. 98 (1977) (requiring courts to determine whether the procedure used for an out-of-court identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification and whether, under the totality of the circumstances, the identification is still reliable). However, our Supreme Court recently joined many other states in rejecting the *Manson* standard where out-of-court "police-arranged identification procedures" are concerned. *Martinez*, 2021-NMSC-002, ¶¶ 70, 79.

**{12}** The identifications at issue in this case "were not the result of impermissible, suggestive, pretrial, law-enforcement-orchestrated procedures"—a fact that is dispositive to our analysis. *Ramirez*, 2018-NMSC-003, ¶ 32. The case before us today does not involve police procedure, suggestive or otherwise, but the actions of private actors—namely, a local news media outlet. For this reason, we decline to extend the holding of *Martinez* and to adopt a per se rule of exclusion in this case, as Defendant requests.

### B.    We Will Not Extend Our Supreme Court's Holding From *Martinez* to This Case or Cases Where There Is No State Action

**{13}** Defendant argues that the identification made by Victim violates his due process rights under New Mexico's stronger protections afforded under Article II, Section 18 of the New Mexico constitution. Defendant asks this Court to not only apply the stronger due process protections set out by our Supreme Court in *Martinez* to his case, but to

extend these protections to *any* "unreliable" eyewitness identification, whether or not it involved governmental action. We decline to do so.

**{14}** First, *Martinez* was decided two years after Defendant filed his suppression motion. Changes in the law generally apply "to cases pending on direct appeal, as long as the issue was raised and preserved below or the failure to apply the new rule constitutes fundamental error." *Kersey v. Hatch*, 2010-NMSC-020, ¶ 19, 148 N.M. 381, 237 P.3d 683. Here, Defendant did not preserve this issue. Although our Supreme Court had not previously determined that "Article II, Section 18 generally provides greater due process protection than its federal counterpart[,]" *Martinez*, 2021-NMSC-002, ¶¶ 34-36, Defendant could have but did not properly preserve this issue for appeal. Under *State v. Leyva*, 2011-NMSC-009, ¶ 40, 149 N.M. 435, 25 P.3d 861, to preserve this issue, Defendant must "assert *in the trial court* that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart *and* provide reasons for interpreting the state provision differently from the federal provision." (Emphasis added.) (Internal quotation marks and citation omitted.) Defendant, therefore, failed to preserve his state constitutional argument for appeal. *See State v. Gomez*, 1997-NMSC-006, ¶ 23, 122 N.M. 777, 932 P.2d 1.

**{15}** Second, our Supreme Court addressed a substantially similar argument in *Ramirez*, and, applying the factors set out in *Perry v. New Hampshire*, 565 U.S. 228, 242 (2012), held that "[i]t is only when law enforcement [is] the source of the taint that due process concerns arise." *Ramirez*, 2018-NMSC-003, ¶ 33. Under the current framework for eyewitness identification, there is no due process concern if there is no state action. *See generally id.*

**{16}** Third, this Court recently declined to extend our Supreme Court's newly adopted per se exclusionary rule for unnecessarily suggestive out-of-court identifications articulated in *Martinez* to unnecessarily suggestive in-court identification procedures. *See State v. Antonio M.*, 2022-NMCA-___, ¶ 47, ___ P.3d ___ (A-1-CA-39709, Mar. 17, 2022). We did so in part because *Martinez* is silent regarding in-court identification procedures. *Id.* ¶ 48. Rather, we applied the standards set out in *Manson* and *Ramirez* regarding eyewitness identification. *Id.* ¶ 43. Similarly here, we apply *Antonio M.* and reject any extension of *Martinez* to cases involving suggestive in-court identification procedures.

**C.   There Is No Due Process Violation Under Our Supreme Court's *Ramirez* Standard**

**{17}** "*Ramirez* and *Manson* set forth an approach to take in deciding if due process requires suppression of eyewitness identifications." *Antonio M.*, ____NMCA___, ¶ 43 (quoting *Ramirez*, 2018-NMSC-003, ¶ 31). Because *Manson* applies only to pretrial identification evidence obtained by a police procedure that was both suggestive and unnecessary, we rely solely on *Ramirez*. *See Perry*, 565 U.S. at 245 (holding that "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct,

warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness").

**{18}** Under *Ramirez*, a defendant cannot invoke the due process clause to suppress an eyewitness identification if there is no state action. *See* 2018-NMSC-003, ¶¶ 33-36. In *Ramirez,* our Supreme Court rejected the defendant's due process argument relating to an eyewitness identification because law enforcement did not taint the procedure and because other due process protections ameliorated any suggestive procedures that occurred in the courtroom. *Id.* The defendant in *Ramirez* argued that media reports tainted his in-court identifications and that his placement at the defense table, ethnicity, and gender were overly suggestive. *Id.* ¶ 28. The *Ramirez* Court observed that its "treatment of the issue presented by [the defendant] is guided by *Perry*." *Ramirez,* 2018-NMSC-003 ¶ 30. After considering the circumstances of *Perry*, the *Ramirez* Court observed that *Perry* applied *Manson* "to determine whether due process requires suppression of eyewitness identification." *Ramirez,* 2018-NMSC-003, ¶¶ 30-31. Under this analysis, our Supreme Court in *Ramirez,* rejected the defendant's arguments because (1) only law enforcement procedures—and not media or the common arrangement of a courtroom—could be the source of unconstitutionally tainted identifications; and (2) other constitutional safeguards protected the defendant from "any fundamental unfairness resulting from eyewitness identifications." *See id.* ¶¶ 33-36.

**{19}** Here, like *Ramirez*, Defendant had ample procedural safeguards at his disposal at trial to address the fallibility of eyewitness testimony, among which was "the right to the effective assistance of an attorney who can expose the flaws of eyewitness testimony on cross-examination and focus the jury's attention on such flaws during opening and closing arguments." *Id.* ¶ 35. Defense counsel did just that. During cross-examination and closing argument, the defense highlighted to the jury the inconsistent descriptions of the robber Victim gave to the police during the investigation of this case. It is the responsibility of the jury, not the court, to weigh a Victim's credibility and determine the accuracy of an in-court identification. *See State v. Romero*, 2019-NMSC-007, ¶ 49, 435 P.3d 1231.

**{20}** We recognize how the news report that Victim viewed could have tainted his memory of the robbery. However, under our case law, the due process clause does not require suppression of the identification because there was no state action. Twelve days after he was robbed, Victim called law enforcement to tell them that he recognized Defendant as the man who robbed him. In this case, the news report Victim viewed identified Defendant as the man who robbed Victim. Nevertheless, this "taint" was not the result of any procedure employed by law enforcement and cannot implicate the due process clause. *Ramirez*, 2018-NMSC-003, ¶¶ 33-36. Thus, neither the pre-trial nor in-court identification of Defendant by Victim violated Defendant's due process rights.

### III. It Was Not Plain Error for the District Court to Admit Victim's Testimony Identifying Defendant

**{21}** Alternatively, Defendant argues that both Victim's in-court and out-of-court identifications of him by Victim should have been excluded under Rule 11-403. Defendant advocates for New Mexico to adopt a "heightened" Rule 11-403 analysis similar to that adopted by New Jersey and Massachusetts. The analysis used by those states focuses on the independent source of the eyewitness identification where an eyewitness identification was tainted by a private actor rather than by police procedure. We decline to adopt such an analysis and review the district court's application of Rule 11-403 to the facts of this case.

**{22}** We review a district court's decision regarding Rule 11-403 for abuse of discretion. *State v. Bailey*, 2015-NMCA-102, ¶ 20, 357 P.3d 423 (stating that "we review a trial court's weighing of probative value against unfair prejudice for an abuse of discretion"). Only when a ruling of the trial court is clearly untenable, not justified by reason, or clearly against the logic and effect of the facts and circumstances of the case, will we hold that the trial court abused its discretion in admitting or excluding evidence. *See id.* ¶ 11.

**{23}** Rule 11-403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "The purpose of Rule 11-403 is not to guard against any prejudice whatsoever, but only against the danger of unfair prejudice." *State v. Otto*, 2007-NMSC-012, ¶ 16, 141 N.M. 443, 448, 157 P.3d 8 (alteration, emphasis, internal quotation marks, and citation omitted). At issue, in this case, is the balance between probative value and unfair prejudice. Unfair prejudice, in the context of Rule 11-403, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Stanley*, 2001-NMSC-037, ¶ 17, 131 N.M. 368, 37 P.3d 85 (internal quotation marks and citation omitted). Evidence is unfairly prejudicial "if it is best characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." *Id.* (internal quotation marks and citation omitted).

**{24}** Here, the admission of Victim's out-of-court identification and the in-court identification of Defendant do not rise to the level of "sensational" or "shocking," therefore, we cannot say that the district court abused its discretion by allowing this testimony. *Id.* The probative value of Victim's testimony is not substantially outweighed by the danger of unfair prejudice or misleading the jury. *See* Rule 11-403.

**{25}** There is certainly probative value in eyewitness identification. However, that probative value is diminished if the identification results from suggestive circumstances. In this case, Victim saw a news report identifying Defendant as a person of interest in several robberies. Further, this news report identified Defendant as the person who robbed Victim. Based on this news report, Victim believed Defendant to be the person who robbed him because he "looked really familiar," and another robbery mentioned in the news report was committed in a similar fashion. But some degree of suggestive

nature within the circumstances surrounding an identification does not alone establish substantial prejudicial effect. *See* Rule 11-403.

**{26}** Reviewing the alleged error in context, we conclude that the admission of Victim's testimony does not rise to the level of abuse of discretion. *See Bailey*, 2015-NMCA-102, ¶ 20. First, Victim stated that he remembers the day of the robbery well because it was the first time he had ever been robbed and that it was a very traumatic experience. Next, during his direct examination, Victim was asked if he saw the person who robbed him in the courtroom, and he positively identified Defendant. The prosecutor asked Victim how confident he was about his identification of Defendant as the person who robbed him. Victim responded, "[p]retty sure. One hundred percent." Admittedly, the circumstances culminating in Victim's identification of Defendant are not without some degree of prejudice, but all evidence is prejudicial to a certain degree. *See Otto*, 2007-NMSC-012, ¶ 16 ("The purpose of [Rule] 11-403 is not to guard against any prejudice whatsoever, but only against the danger of unfair prejudice." (alteration, emphasis, internal quotation marks, and citation omitted)). Furthermore, Victim's testimony identifying Defendant, at best, goes to the weight of the evidence and not its admissibility. *See State v. Gerald B.*, 2006-NMCA-022, ¶ 23, 139 N.M. 113, 129 P.3d 149 (noting that "the qualifications of [a] witness go to weight and not admissibility" (internal quotation marks and citation omitted)).

**{26}** Because Defendant failed to establish that Victim's identification of him unfairly prejudiced him, we conclude that no error infected the fairness or integrity of the trial. Therefore, the district court did not abuse its discretion and we affirm its admission of this testimony.

## IV.   The District Court Did Not Err in Refusing to Grant a Mistrial

**{27}** Lastly, Defendant argues that the district court should have granted a mistrial when the prosecution, during the trial, showed the jury a cell phone that was neither admitted in evidence nor linked to this case. This argument is without merit.

**{28}** "We review a [district] court's denial of a motion for mistrial under an abuse of discretion standard." *State v. Fry*, 2006-NMSC-001, ¶ 52, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted). The district court abuses its discretion in ruling on a motion for a mistrial if it acts in an "obviously erroneous, arbitrary, or unwarranted manner," *id.* ¶ 50 (internal quotation marks and citation omitted), or when the decision is "clearly against the logic and effect of the facts and circumstances before the court." *State v. Lucero*, 1999-NMCA-102, ¶ 32, 127 N.M. 672, 986 P.2d 468 (internal quotation marks and citation omitted). Furthermore, our case law acknowledges that "generally, a prompt admonition . . . to the jury to disregard and not consider inadmissible evidence sufficiently cures any prejudicial effect which might otherwise result." *State v. Armijo*, 2014-NMCA-013, ¶ 9, 316 P.3d 902 (alterations, emphasis, internal quotation marks, and citation omitted); *see also State v. Shoemaker*, 1981-NMCA-151, ¶¶ 7, 9, 11-13, 97 N.M. 253, 638 P.2d 1098 (recognizing that a curative instruction was sufficient to cure any prejudice that occurred when the state

attempted to impeach the defendant with a prior indictment that did not result in a conviction).

**{29}** Defendant argues that this case shares several characteristics with *State v. Hernandez*, such as reckless prosecutorial action and vague curative instructions from the district court judge. Therefore, according to Defendant, we must conclude that the district court abused its discretion when it denied Defendant's request for a mistrial. *See* 2017-NMCA-020, ¶ 17, 388 P.3d 1016. *Hernandez* is distinguishable, however. In *Hernandez*, an officer falsely claimed that the defendant had confessed to driving the vehicle involved in a vehicular homicide. *See id.* ¶¶ 1, 10-11. The officer's testimony went to "the most critical issue in the case," and one that was "highly disputed by the parties." *Id.* ¶ 16. Notwithstanding that this false statement was not intentionally elicited, *see id.* ¶¶ 18-19, this Court examined the prejudicial effect of the error and the sufficiency of the curative instruction, *see id.* ¶¶ 20-26, because of the "uniquely prejudicial" nature of the comment under the particular circumstances of that case. *Id.* ¶ 16; *see also id.* ¶ 21 ("[A] confession can be highly prejudicial and warrants a close examination of the circumstances. Here, the confession . . . struck at the crux of the defense offered at trial."). The case before us today does not involve uniquely prejudicial circumstances like those in *Hernandez*. Simply stated, *Hernandez* does not justify departing from the general rule that a curative instruction cures any prejudicial effect from inadmissible evidence which might otherwise result. *See Armijo*, 2014-NMCA-013, ¶ 9.

**{30}** Before the State opened Exhibit 9, which contained three bags with three different cell phones, Defendant made a foundational objection because Victim was testifying, not the officer who prepared the exhibits. The district court allowed the State to proceed subject to conditional relevance and based on a forthcoming foundation. *See* Rule 11-104(B) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."). Significantly, Defendant did not object to the district court's use of conditional relevance to admit this evidence and did not object when the State pulled three separate sealed bags out of the larger Exhibit 9. Defendant did object once an LG cell phone was pulled out and the prosecutor stated, in front of the jury, that it was an LG phone. The district court promptly gave the jury a limiting instruction, stating,

> You may not consider these items at all in your deliberations or in your private consideration of the evidence here at trial unless and until those items are re-presented through a witness, admitted into the body of evidence, and published for your consideration. So you may not consider [Exhibits] 9, 9.1, 9.2, or 9.3 at all unless given contrary direction later on in the trial.

**{31}** The following day, Defendant moved, under *Hernandez*, for a mistrial. The district court stated that it thought that there was a difference between a false confession, which was the case in *Hernandez*, and an unexplained cell phone being shown to the

jury. After hearing arguments from the parties, the district court found that the facts in this case were "highly" distinguishable from *Hernandez,* denied Defendant's motion for mistrial, and offered him a curative instruction. Defendant chose to wait on whether he wanted a curative instruction. The court ultimately gave the jury a curative instruction in the jury instructions, stating that

> [n]o physical evidence regarding [Victim's] phone has been submitted to you for consideration while you deliberate. You must not make any conclusions that the Exhibits 9, 9.1, 9.2 or 9.3 contained that phone. Nor must you make any conclusions regarding what those Exhibits contained.

**{32}** Given these circumstances, we conclude that the district court "took appropriate measures to cure any error and potential prejudice" and "[t]here was no need for a mistrial." *State v. Caudillo*, 2003-NMCA-042, ¶ 14, 133 N.M. 468, 64 P.3d 495. First, the district court promptly issued a limiting instruction to the jury to disregard and not consider the inadmissible evidence of the phone; therefore, we assume this instruction cured any prejudicial effect. *See Armijo*, 2014-NMCA-013, ¶ 9. Next, we also "assume the jury followed the court's [curative] instruction." *State v. Ancira*, ___-NMCA- ___, ¶ 40, ___ P.3d ___ (No. A-1-CA-38173, Mar. 23, 2022) (internal quotation marks and citation omitted). Thus, we cannot say that the trial court acted in an obviously erroneous, arbitrary, or unwarranted manner. *See Fry*, 2006-NMSC-001, ¶ 50.

**{33}** Accordingly, we conclude that the curative instruction was sufficient to cure any potential prejudice from the brief showing of an unexplained LG phone to the jury. We, therefore, hold that the district court did not abuse its discretion in denying Defendant's motion for a mistrial.

**CONCLUSION**

**{34}** For the reasons stated above, we affirm Defendant's convictions for armed robbery, conspiracy to commit armed robbery, and resisting, evading, or obstructing an Officer.

**{35}  IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**MEGAN P. DUFFY, Judge**