2006-NMCA-022

129 P.3d 149

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**GERALD B., Child–Appellant.**

No. 24,538.

Court of Appeals of New Mexico.

Jan. 5, 2006.

Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Albuquerque, NM, for Appellee.

Sheri A. Raphaelson, Espanola, NM, for Appellant.

## OPINION

ROBINSON, Judge.

{1} Child appeals his adjudication as a delinquent for possession of one ounce or less of marijuana contrary to NMSA 1978, § 30–31–23(B)(1) (2005). On appeal, Child makes three arguments: (1) the trial court erred in refusing to suppress statements and evidence because he was not advised of his rights, pursuant to NMSA 1978, § 32A–2–14 (2005), prior to questioning before a pat-down search; (2) insufficient evidence exists to convict him of possession of marijuana; and (3) the prosecutor exercised a peremptory challenge during jury selection in a racially discriminatory manner.

{2} We hold that (1) Section 32A–2–14 does not require police officers to issue warnings to juveniles, pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before asking about needles or weapons prior to conducting a valid pat-down search; (2) sufficient evidence exists to support the conviction for possession of marijuana; and (3) the claim of racial discrimination fails under the analysis in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We, therefore, affirm Child's adjudication of delinquency.

## I. BACKGROUND AND FACTS

{3} At approximately 11:00 a.m., on December 1, 2002, police officers arrived at the Santa Fe Plaza to investigate a citizen's complaint about individuals selling drugs in the area. According to his testimony, Officer Worth approached seventeen-year-old Child and nineteen-year-old Adam Stewart because they matched the descriptions in the complaint. Child and Stewart appeared very nervous and were wearing heavy clothing that could have concealed weapons. The officer told Stewart that he was going to conduct a pat-down search for weapons, but first asked if Stewart had any syringes with nee-

dles. Officer Worth testified that he always asked about needles to avoid getting pricked. Stewart produced a syringe, which he admitted he had used to inject cocaine. Officer Worth patted down Stewart, then arrested him for possession of drug paraphernalia.

{4} Officer Worth testified that, during the search of Stewart, Child kept turning his body sideways as if preparing to attack. Concerned for his safety, the officer decided to perform a pat-down search of Child. He first asked if Child had any syringes with needles. Child said he did not have any needles, but that he did have some marijuana, and handed the officer a small plastic sandwich bag from his pocket. Another officer performed the pat-down search, but did not find any additional contraband. Officer Worth then asked if Child had any more marijuana. Child reached into his jacket and produced eight more sandwich bags. Child was arrested, handcuffed, and placed in the police car. Only then was Child advised of his *Miranda* rights.

## A. Motion to Suppress Statements and Marijuana

{5} The State filed an amended petition in district court, charging Child with possession of one ounce or more of marijuana, contrary to NMSA 1978, § 30–31–23(B)(2) (2005); distribution of marijuana, contrary to NMSA 1978, § 30–31–22 (2005); and conspiracy to distribute marijuana, contrary to Section 30–31–22 and NMSA 1978, § 30–28–2 (1979). Child filed a motion to suppress all evidence of marijuana and accompanying statements. Child argued that he should have been given *Miranda* warnings, as required by Section 32A–2–14 and *State v. Javier M.*, 2001–NMSC–030, 131 N.M. 1, 33 P.3d 1, before the officer asked about needles because Child was being held in an investigatory detention. Child also filed a motion to suppress all statements made to the arresting officer following his arrest. After a hearing, the district court denied both motions to suppress. The court concluded that the officer initially had reasonable suspicion to approach Child and Stewart and that it was proper for the officer to conduct a pat-down search for offi-

cer safety, pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The court concluded that the question regarding syringes prior to the pat-down search was an administrative question, which does not require a previous advisement of rights under *Javier M.*

### B.  Sufficiency of the Evidence

{6} The nine plastic bags police took from Child were introduced into evidence and viewed by the jury.  Lab tests on the marijuana were excluded because the State disclosed the results on the morning of the trial. Officer Worth, who had worked as a narcotics agent and had handled marijuana numerous times in his eighteen years in law enforcement, testified that, in his opinion, the bags contained marijuana.  No expert witnesses testified.

{7} At the close of the State's case, Child moved for a directed verdict on all counts, which the court granted on the conspiracy charge, but denied on the marijuana charges.

### C.  Jury Selection

{8} Following voir dire, the State exercised its first of two peremptory challenges to remove a prospective juror named David Grayson.  Previously, the State had requested Grayson's removal for cause because he was an attorney, which the court ruled was not a sufficient reason.  Defense counsel did not object to the first peremptory strike. The State used its second peremptory challenge to remove a prospective juror named Michael Begay.  Defense counsel objected, alleging racial bias, because Begay was the only Native American on the panel, and requested a non-racial reason for the peremptory strike.

{9} Although the district court did not rule that defense counsel had made a prima facie showing of discriminatory intent, the prosecutor denied that the peremptory strike was racially motivated.  The prosecutor said she wanted Begay excused because he did not appear to be listening.  The court allowed the peremptory challenge.  Defense counsel subsequently stated that she thought the prospective juror was paying attention.  The prosecutor responded that there was no showing that Begay was the only Native American on the panel and again denied that she wanted to strike Begay due to racial reasons.  She added that Begay appeared to be closing his eyes and falling asleep.  Defense counsel suggested that the prosecutor point out anyone else she thought was Native American.  The State objected to defense counsel basing its claim on Begay's appearance and also argued that a person's name does not necessarily indicate his ethnicity.

{10} The district court allowed the peremptory challenge for the reasons given by the prosecutor stating that "[Child] to my knowledge is not Native American and I do not believe that that's the reason that the State is exercising its peremptory ... excusal for ... this particular juror."  Defense counsel stated that Child was Hispanic.  The final panel apparently included three jurors with Hispanic surnames and three jurors with Anglo surnames.  There is nothing in the record regarding the ethnicity of the potential jury members other than surnames. However, from the record, it appears defense counsel based her *Batson* claim, not on surnames, but on the appearance of the prospective jurors.

{11} The jury returned a verdict, finding that Child committed the lesser-included offense of possession of one ounce or less of marijuana.  The jury was unable to reach a verdict on the distribution charge.

## II.  DISCUSSION

### A.  Motion to Suppress Statements and Marijuana

{12} On appeal, Child contends that, under *Javier M.,* he was statutorily entitled to be warned of his right to remain silent and that anything he said could be used against him in a delinquency hearing.  2001–NMSC–030, ¶ 41, 131 N.M. 1, 33 P.3d 1.  We disagree.

{13} An appeal of a suppression motion involves a mixed question of fact and law.  We view the facts in the light most favorable to the State as the prevailing party, and defer to the district court's findings of fact supported by substantial evidence. *State v. Urioste,* 2002–NMSC–023, ¶ 6, 132

N.M. 592, 52 P.3d 964. We review de novo the trial court's application of the law to those facts. *State v. Ochoa,* 2004–NMSC–023, ¶ 5, 135 N.M. 781, 93 P.3d 1286.

{14} In *Javier M.,* our Supreme Court held that Section 32A–2–14 provides children with broader rights in the area of police questioning than those guaranteed by *Miranda* jurisprudence. 2001–NMSC–030, ¶ 1, 131 N.M. 1, 33 P.3d 1. Our Supreme Court concluded that "a child need not be under custodial interrogation in order to trigger the protections of the statute." *Id.* Rather, these protections are triggered when a child is subject to an investigatory detention. *Id.* Therefore, "prior to questioning, a child who is detained or seized and suspected of wrongdoing must be advised that he or she has the right to remain silent and that anything said can be used in court." *Id.*

{15} However, in our case, Child's initial incriminating statements and evidence was not intended to confirm or dispel the officer's suspicions of whether Child committed a delinquent act. "[W]hen an officer *reasonably* believes the individual may be armed and dangerous [during an investigatory stop, he] may check for weapons to ensure personal safety." *State v. Chapman,* 1999–NMCA–106, ¶ 15, 127 N.M. 721, 986 P.2d 1122 (internal quotation marks and citation omitted). Furthermore, police officers about to conduct a lawful frisk or search of a suspect need not give *Miranda* warnings before asking the suspect about the presence of dangerous objects on his person. *See United States v. Lackey,* 334 F.3d 1224, 1225 (10th Cir.2003). In *Lackey,* the Tenth Circuit explains that "[t]he purpose of the question 'Do you have any guns or sharp objects on you?' is not to acquire incriminating evidence; it is solely to protect the officers, as well as the arrestee, from physical injury." *Id.* at 1228.

{16} To justify a frisk for weapons, an officer must have a sufficient degree of articulable suspicion that the person being frisked is both armed and presently dangerous. *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Moreover, in *Chapman,* our Court emphasized that the officer "provided more than [just] conclusive

characterizations of [the defendant]. Instead of just describing [the d]efendant as nervous, the deputy identified specific behaviors and changes in [the d]efendant's demeanor and attitude that explain[ed] why he believed that [the d]efendant might be armed and dangerous." 1999–NMCA–106, ¶ 16, 127 N.M. 721, 986 P.2d 1122 (internal citation omitted).

{17} Here, Officer Worth approached Child and Stewart because they matched the descriptions in the complaint. Child and Stewart appeared very nervous and were wearing heavy clothing that could have concealed weapons. The officer told Stewart that he was going to conduct a pat-down search for weapons, but first asked if he had any syringes with needles. After Stewart produced a syringe, Officer Worth patted him down and then arrested him for possession of drug paraphernalia. During the search of Stewart, Officer Worth testified that he noticed that Child kept turning his body sideways as if he was preparing to attack. Concerned for his safety, he decided to conduct a pat-down search of Child. Like Stewart, he asked Child as well if he had any syringes with needles. At that time, Child said he did not have any needles, but that he had some marijuana and handed it to the officer. Officer Worth then asked if Child had any more marijuana, then Child admitted that he had eight additional bags.

{18} During his testimony, Officer Worth explained his reason for asking Stewart if he had any needles was "so I don't get punctured while I'm searching." He went on to explain that dirty needles, shared by intravenous drug users, can transmit AIDS and other infectious diseases, and that he was trained to ask the question. He added, "I don't know a policeman who doesn't ask that question."

{19} Here, Child does not dispute that Officer Worth had a right to conduct a pat-down search for the officer's personal safety under *Chapman.* We conclude that asking Child whether he had any needles, within the context of a pat-down search, was proper for the purpose of ensuring the officer's personal safety. *Cf. Chapman,* 1999–NMCA–106, ¶ 15, 127 N.M. 721, 986 P.2d 1122 ("[T]he officer may check for weapons

to ensure personal safety."). Questions intended to ensure the officer's personal safety during a pat-down search are an integral part of the search itself. Moreover, we note that Officer Worth's question is not prohibited by *Javier M.* and Section 32A–2–14 because (1) it was not "intended to confirm or dispel the officer's suspicions that [Child was committing] a delinquent act," and (2) Child's response was a voluntary statement. *See Javier M.*, 2001–NMSC–030, ¶ 40, 131 N.M. 1, 33 P.3d 1 ("The statute's protections also do not apply ... when the child makes a voluntary statement."). Therefore, when Child volunteered that he possessed marijuana, in response to Officer Worth's inquiry about needles during a pat-down search, Child was not entitled under Section 32A–2–14 to suppression of the statements or marijuana.

■■■■ {20} We do find it necessary to address Officer Worth's second question regarding whether Child had any more marijuana. In light of our discussion above, we conclude that Officer Worth did not ask the second question because of concerns for officer safety. The question about additional marijuana clearly was intended to confirm, or dispel, the officer's suspicions that Child committed a delinquent act. *See Javier M.*, 2001–NMSC–030, ¶ 40, 131 N.M. 1, 33 P.3d 1. As a result, Officer Worth was required to advise Child of his "constitutional rights" prior to that questioning. Because Officer Worth failed to do so, Child's admission that he had eight additional bags of marijuana should have been suppressed. Given the jury's verdict, however, we conclude that the trial court's error in failing to suppress any statements, regarding the additional marijuana, was harmless. The jury only found that Child committed the act of possession of one ounce or less of marijuana. As we next discuss, even if we were to conclude that the physical evidence accompanying Child's improperly admitted statement should have been excluded, the evidence viewed in the light most favorable to the State would support the jury's verdict concerning the first small bag of marijuana, which Child voluntarily admitted having and produced in response to the question about needles.

## B. Sufficiency of the Evidence

■■■■ {21} Child argues that the evidence was insufficient to prove, beyond a reasonable doubt, that he had marijuana in his possession. *See* UJI 14–3101 NMRA. In evaluating a sufficiency of the evidence challenge, we determine "whether there is substantial evidence of either a direct or a circumstantial nature to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to conviction." *State v. Sanchez*, 2001–NMCA–109, ¶ 14, 131 N.M. 355, 36 P.3d 446. We view the evidence in the light most favorable to the State, resolving all conflicts and indulging all reasonable inferences to uphold the verdict. *State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994).

{22} Child argues that the evidence was insufficient to support his conviction because Officer Worth's lay testimony was the only evidence presented at trial to prove that the substance in the bags was marijuana. We reject this argument.

■■■■ {23} First, as Child concedes, expert testimony is not required to identify illegal drugs. "Lay opinion concerning the identification of marijuana is admissible, and the qualifications of the witness go to weight and not admissibility." *State v. Rubio*, 110 N.M. 605, 607, 798 P.2d 206, 208 (Ct.App. 1990). Officer Worth's many years of experience in narcotics and drug investigations qualified him to give his opinion that the substance was marijuana. The jury was entitled to consider the officer's testimony and give it whatever weight the jury deemed appropriate. *See id.*

■■■■ {24} Next, the record indicates that Officer Worth's identification was not the only evidence admitted at trial. According to Officer Worth's testimony, Child referred to the substance in both the first bag and the eight other bags as marijuana. We are mindful that an extra-judicial admission is "not sufficient as evidence that a child committed delinquent acts absent other corroborating evidence." *In re Bruno R.*, 2003–NMCA–057, ¶ 17, 133 N.M. 566, 66 P.3d 339. However, Child also testified that the first

bag was his own marijuana. In addition, the jury could infer, from Child's admissions and the physical evidence, that the substance in Child's possession was marijuana.

{25} We find substantial evidence exists to support Child's conviction. Viewed in the light most favorable to the State, and resolving all inferences to uphold the verdict, we conclude the jury could reasonably infer, from Child's admissions and the physical evidence of the first bag, that the substance in Child's possession was marijuana. Thus, even if the additional eight bags were excluded because Child was not given *Miranda* warnings as required by the statute and *Javier M.*, sufficient evidence exists to support the verdict that Child possessed an ounce or less of marijuana.

## C. The State's Use of Peremptory Challenges

{26} Child argues that the State's peremptory challenge against a Native American prospective juror was racially motivated and violated Child's constitutional rights. It is well settled that the State may not exercise its peremptory challenges to exclude potential jurors solely on account of their race without violating the equal protection rights of both the defendant and the prospective jurors. *Batson,* 476 U.S. at 85–89, 106 S.Ct. 1712; *State v. Martinez,* 2002–NMCA–036, ¶ 9, 131 N.M. 746, 42 P.3d 851.

{27} A determination of whether a prosecutor discriminated in exercising peremptory challenges involves a three-step analysis from *Batson. Martinez,* 2002–NMCA–036, ¶ 10, 131 N.M. 746, 42 P.3d 851. First, a defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id.* If the defendant makes the requisite showing, then the burden shifts to the prosecutor to provide a racially neutral reason for the challenges. *Id.* If the trial court finds that the State's explanation is racially neutral, then the burden shifts back to the defendant "to show that the reason given is in fact pretext for a racially discriminatory motive." *Id.*

{28} In reviewing a claim of racial discrimination in the use of peremptory challenges, we give deference to the trial court's factual findings, but review its legal conclusions de novo. *See id.* ¶ 21. "Deference to the trial court is especially important in evaluating the reasons a prosecutor gives for making a challenge, as well as the reasons a defendant puts forth for claiming those reasons are pretextual." *Id.* ¶ 20.

### 1. Prima Facie Showing

{29} Ordinarily, a party desiring to raise a *Batson* claim of discrimination must first make a prima facie showing that (1) the State exercised its peremptory challenges to remove members of a racial group from the jury panel and (2) these facts and any other relevant circumstances raise an inference that the State used its challenges to exclude members based solely on race. *Martinez,* 2002–NMCA–036, ¶ 11, 131 N.M. 746, 42 P.3d 851. Child argues that the prosecution's removal of the only Native American from the jury panel raises an inference of discrimination. The State contends that even if Begay was the only Native American member of the venire, which defense counsel did not establish below, Child failed to meet his burden of proving discriminatory intent.

{30} Child is correct that our cases have indicated that a prima facie case can be made when "the prosecution uses a peremptory challenge to remove the sole member of a particular racial group from the jury." *Id.* ¶ 29. A defendant need not share the same race as the prospective juror to object to peremptory challenges that exclude jurors based on race. *Powers v. Ohio,* 499 U.S. 400, 402, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (recognizing that one purpose of *Batson* is to address the right of a juror not to be excluded from serving on a jury for racial reasons). "A single prospective juror may be stricken for a racially motivated reason and the jury still retain its 'representative' character. This, nevertheless, offends equal protection." *State v. Gonzales,* 111 N.M. 590, 595, 808 P.2d 40, 45 (Ct.App.1991), *modified on other grounds by State v. Dominguez,* 115 N.M. 445, 452, 853 P.2d 147, 154 (Ct.App.1993).

{31} In this case, however, we leave aside the issue of whether Child made the necessary showing to establish a prima facie case. As the record indicates, the trial court made no findings on whether Child established the first step of the *Batson* inquiry. As soon as defense counsel requested a reason for the peremptory strike against Begay, the prosecutor offered a racially neutral explanation. Thus, the trial court had no opportunity to determine whether Child had made a prima facie showing of intentional discrimination.

{32} "[W]here the record shows that the trial court did not clearly indicate whether or not defendant made a prima facie case, ... remand is the appropriate remedy." *Gonzales,* 111 N.M. at 596, 808 P.2d at 46. In *Hernandez v. New York,* the United States Supreme Court held that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion). Because the State proceeded past the first step of the *Batson* analysis without questioning Child's prima facie showing, and the trial court made findings on intentional discrimination, we proceed with the next step of the analysis.

### 2. Racially Neutral Explanation

{33} In *Batson's* second step, the burden shifts to the State to articulate a racially neutral explanation for the peremptory challenge. *See Gonzales,* 111 N.M. at 597, 808 P.2d at 47. At this point, the focus of the inquiry "is the facial validity of the prosecutor's explanation." *State v. Jones,* 1997–NMSC–016, ¶ 3, 123 N.M. 73, 934 P.2d 267 (quoting *Hernandez,* 500 U.S. at 360, 111 S.Ct. 1859) (internal quotation marks and citation omitted). The prosecutor explained that she challenged Begay because she did not think he was listening. By explaining that the prospective juror appeared to be closing his eyes and falling asleep, the State provided a racially neutral explanation for its challenge. *Cf. id.* ¶ 5 (concluding that failure to make eye contact and lack of assertiveness is a racially neutral reason). Thus, the prosecutor met the legal threshold by offering a reason to exclude the juror based not on race, but on the juror's ability to fairly and impartially hear the case. *See Gonzales,* 111 N.M. at 596, 808 P.2d at 46 (relating racially neutral reasons "to the juror's ability to fairly and impartially hear the case").

### 3. Determination of Intentional Discrimination

{34} In the final step of the *Batson* analysis, after the prosecutor produces an explanation for exercising peremptory challenges that the trial court finds facially valid, the defendant may "refute the stated reason or otherwise prove purposeful discrimination." *Jones,* 1997–NMSC–016, ¶ 3, 123 N.M. 73, 934 P.2d 267. The trial court's duty is "to consider the reason advanced and to determine whether, considering all the facts and circumstances, defendant has carried his burden of persuading the trial court that the state used one or more of its peremptory challenges to eliminate jurors on the basis of race." *Gonzales,* 111 N.M. at 597, 808 P.2d at 47. "The trial court's determination that the prosecution has or has not intentionally discriminated on the basis of race is a finding of fact and will not be disturbed on appeal if it is supported by substantial evidence." *Id.*

{35} The trial court found that the State met its burden of coming forward and establishing a racially neutral explanation for its use of the peremptory challenge against Begay. Child argues that the racially neutral reason given by the prosecutor must be true and Child successfully disputed it by arguing that the prospective juror appeared to be paying attention. In Child's view, the court erred because it never made any factual finding regarding the disputed accounts of Begay's behavior during voir dire. Child also argues that the trial court erred in applying the wrong standard—whether Child is of the same race as the excluded juror.

{36} We agree with Child that the trial court would err, as a matter of law, if it based its ruling that the State did not exercise its peremptory challenges in a racially discriminatory manner on the finding

that the prospective juror was a different race than Child. However, the court explicitly stated that it did not believe the state exercised its peremptory challenge for racially discriminatory reasons. The court accepted the reasons provided by the State. A prosecutor's subjective belief might not be susceptible to verification or objective rebuttal, but that does not mean a reason for a peremptory strike is inherently discriminatory. *See Jones*, 1997–NMSC–016, ¶¶ 4–5, 123 N.M. 73, 934 P.2d 267. As courts have recognized, the ultimate *Batson* findings "largely will turn on evaluation of credibility" of counsel. *Jones*, 1997–NMSC–016, ¶ 4, 123 N.M. 73, 934 P.2d 267 (internal quotation marks and citation omitted). Because we review the action of the trial court under a deferential standard, we conclude that the trial court was in the best position to evaluate the prosecutor's sincerity and to determine she did not purposefully discriminate in striking jurors.

{37} In sum, the burden was on Child not only to make an adequate record to establish his contention that the prosecutor struck the only Native American member of the venire, but that she did so for discriminatory reasons. In response to Child's claim that the prosecutor improperly exercised a peremptory challenge to remove a prospective juror from the jury panel, the prosecutor gave a race-neutral explanation. The trial court explicitly found the prosecutor's explanation credible. We, therefore, conclude that Child failed to carry his burden of showing sufficient evidence to support a finding of discriminatory intent. As a result, Child's claim, that the State exercised a peremptory challenge during jury selection in a racially discriminatory manner, fails.

## III. CONCLUSION

{38} We therefore hold that the trial court committed only harmless error in admitting evidence of eight bags of marijuana on Defendant's person, and did not otherwise err in (1) admitting evidence of the results of a pat-down search without *Miranda* warnings, and (2) in allowing the State's peremptory challenge of a Native American juror. Finding sufficient evidence to support Defendant's conviction for possession of marijuana, we affirm Child's adjudication of delinquency.

{39} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and MICHAEL E. VIGIL, Judges.