The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: October 17, 2022

**No. A-1-CA-38808**

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.

**DALE BLANTON,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**OPINION**

**IVES, Judge.**

{1}     The question in this appeal is whether the State's use of a peremptory strike to exclude the only Black member of the jury panel was substantially motivated by racial discrimination. Defendant Dale Blanton objected to the strike pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). The district court overruled the objection, and the jury found Defendant guilty of aggravated battery with a deadly weapon, contrary to NMSA 1978, Section 30-3-5(A), (C) (1969). We agree with Defendant that the district court erred by rejecting his *Batson* claim and hold that (1) Defendant made a prima facie case of racial discrimination; (2) the State proffered two race-neutral justifications for the challenged peremptory strike; and (3) those justifications were pretexts for discrimination in light of the State's treatment of panel members similarly situated to the member that the State struck. We therefore reverse Defendant's conviction and remand for a new trial.[1]

**BACKGROUND**

{2}     A grand jury indicted Defendant for aggravated battery with a deadly weapon, and the case proceeded to trial. During jury selection, the State used a peremptory strike to exclude a potential juror, Belva Stamps, from serving as an alternate.

---

[1]Because we reverse under *Batson*, we do not address Defendant's argument that fundamental error resulted from a mistake in the instructions the jury received on the doctrine of self-defense.

Defense counsel objected, arguing that allowing the strike would violate *Batson* when Ms. Stamps was the only Black person in the venire, she had not spoken during voir dire, and the State had not directed any questions to her. The prosecutor responded that his reason for striking Ms. Stamps was that she had not spoken during voir dire, adding that he had not realized Ms. Stamps is Black. After defense counsel contended that Ms. Stamps's silence was not a legitimate reason for exercising a peremptory strike under the circumstances, the district court admonished the State, "Let's have some more." The prosecutor then reiterated that Ms. Stamps had not spoken during voir dire and added that, because Ms. Stamps indicated on her juror questionnaire that she had some paralegal training, the State was "afraid she might use some of her legal knowledge." In response, defense counsel called Ms. Stamps's silence a "sham reason" when the State had not asked her any questions and argued that the explanation that Ms. Stamps had legal knowledge did not hold up to scrutiny either when the State had not sought to exclude a police officer from serving as a juror. The district court overruled the *Batson* challenge, stating that the court did not have an issue with the State's explanation and reasoning that, because Ms. Stamps would have been seated as the second alternate juror, it was unlikely she would have deliberated on the case in any event. Defendant was convicted, and he appeals.

**DISCUSSION**

{3}     Peremptory strikes may not be used "to exclude otherwise unbiased and well-qualified individuals solely on the basis of their race, gender, economic status, or any other similar discriminatory characteristic." *State v. House*, 1999-NMSC-014, ¶ 84, 127 N.M. 151, 978 P.2d 967. When the prosecution does so in a criminal case, it "violates [the] defendant's right to equal protection because it denies . . . the protection that a trial by jury is intended to secure:" that one's rights be determined by one's peers or equals. *Batson*, 476 U.S. at 86. "In the eyes of the Constitution, one racially discriminatory peremptory strike is one too many." *Flowers v. Mississippi*, 139 S. Ct. 2228, 2241 (2019). The defendant suffers an equal protection violation when "the prosecution use[s] *any* of its peremptory challenges" to exclude a member of a protected class from the jury because of that membership, even if the petit jury turns out to be a representative one. *State v. Gonzales*, 1991-NMCA-007, ¶ 17, 111 N.M. 590, 808 P.2d 40. The accused is not the only person harmed by discriminatory jury selection. Every person who is excluded from jury service is deprived of the constitutional right to equal protection of the laws, *id.* ¶ 15, and, in addition, suffers "a profound personal humiliation heightened by its public character." *Powers v. Ohio*, 499 U.S. 400, 413-14 (1991). The courthouse walls do not contain this harm. It spills out and "touch[es] the entire community," *Batson*, 476 U.S. at 87, "cast[ing] doubt on the integrity of the judicial process," *Powers*,

3

499 U.S. at 411 (internal quotation marks and citation omitted), and "undermin[ing] public confidence in the system." *Gonzales*, 1991-NMCA-007, ¶ 15.

{4}     In analyzing Defendant's claim that a discriminatory strike occurred here, we defer to the district court's factual determinations but review its conclusion on constitutionality de novo. *State v. Salas*, 2010-NMSC-028, ¶ 33, 148 N.M. 313, 236 P.3d 32; *see also Bustos v. City of Clovis*, 2016-NMCA-018, ¶¶ 30-31, 365 P.3d 67 (clarifying that, while a district court's findings are to be given great deference, the conclusion as to the constitutional propriety of the peremptory challenge is reviewed de novo because the ultimate issue in *Batson* challenges relates to conduct, which requires the reviewing court to consider "evaluative judgments, . . . which are also inherently factual"); *State v. Jones*, 1997-NMSC-016, ¶ 11, 123 N.M. 73, 934 P.2d 267 (explaining that "an appellate court need not defer to a trial court on whether a reason [given by a party for exercising a peremptory challenge to strike a potential juror] is constitutionally adequate").

{5}     A three-part test guides our analysis. First, we ask whether Defendant carried his burden of establishing a prima facie case of racial discrimination in the State's use of the strike. *Salas*, 2010-NMSC-028, ¶ 31. If we conclude that he did, the second step is to ask whether the State carried its burden of coming forward with a race-neutral explanation for its use of the strike. *Id.* ¶ 32. If it did, we proceed to the third step and ask whether Defendant showed that the State's race-neutral

4

explanation "is in fact pretext for a racially discriminatory motive." *State v. Martinez*, 2002-NMCA-036, ¶ 10, 131 N.M. 746, 42 P.3d 851.

{6}     In this case, we conclude that both a prima facie showing of discrimination and race-neutral explanations are present and that those explanations are pretexts for racial discrimination. We therefore reverse.[2]

**I.      Defendant Made a Prima Facie Case of Racial Discrimination**

{7}     A prima facie case of discrimination has two elements: (1) the excluded juror must be a member of a protected class, and (2) the surrounding circumstances must suggest that the sole motive for using the strike was the juror's membership within that class. *Salas*, 2010-NMSC-028, ¶ 31. The State essentially concedes that Defendant made a prima facie case here. And, although this Court is not bound by the State's concession on appeal, *see State v. Montoya*, 2015-NMSC-010, ¶ 58, 345 P.3d 1056, we believe that concession is appropriate because (1) the stricken juror, Ms. Stamps, is Black and is thus a member of a protected racial group, *see generally Batson*, 476 U.S. at 84-89; and (2) Ms. Stamps was the only Black person in the venire, raising a presumption of discriminatory motive in the State's decision to

---

[2]Contrary to a remark the district court made when it rejected Defendant's *Batson* challenge, it is legally insignificant that Ms. Stamps was a prospective *alternate* juror. When a prospective juror is struck because of membership within a protected class, it does not matter whether the juror who takes the excluded juror's place ultimately deliberates on the case, and, thus, even the discriminatory exclusion of a prospective alternate requires reversal. *Bustos*, 2016-NMCA-018, ¶ 47.

exclude her from the jury. *See Martinez*, 2002-NMCA-036, ¶ 24 ("Courts are in near universal agreement . . . that a party's decision to strike all the members of a particular race establishes a prima facie case of discrimination."). We therefore proceed to the second step of the analysis.

**II.     The State Gave Two Race-Neutral Explanations for the Strike**

{8}     The State bears the burden at *Batson*'s second step, and the question is whether "a discriminatory intent is inherent in the [State's] explanation" for using a peremptory strike to exclude Ms. Stamps. *Salas*, 2010-NMSC-028, ¶ 32 (internal quotation marks and citation omitted). Because neither of the State's explanations— that Ms. Stamps did not speak during voir dire and that she had paralegal training— is inherently discriminatory, we conclude that both are race-neutral and proceed to step three.

**III.    Defendant Proved the State's Race-Neutral Explanations Were Pretextual**

{9}     Having concluded that the parties carried their respective burdens at the first two steps of the analysis, we reach the third step and the dispositive issue in this case: whether Defendant proved purposeful racial discrimination in the State's attempt to exclude Ms. Stamps from the jury. *Id.* Our task is to determine whether the State "was motivated in substantial part by discriminatory intent," *Flowers*, 139 S. Ct. at 2244 (internal quotation marks and citation omitted), and the State's "proffer of [a] pretextual explanation naturally gives rise to an inference of

6

discriminatory intent." *Snyder v. Louisiana*, 552 U.S. 472, 485 (2008). "By far the most common factor noted by courts holding a state's explanations to be pretextual is a varying treatment of [panel members of different races]." *State v. Goode*, 1988-NMCA-044, ¶ 11, 107 N.M. 298, 756 P.2d 578. "When a prosecutor's proffered reason for striking a [B]lack panelist applies just as well to an otherwise similar, [non-Black] panelist who is permitted to serve, that is evidence tending to prove purposeful discrimination." *Flowers*, 139 S. Ct. at 2248-49 (internal quotation marks and citation omitted). Potential jurors need not be "identical in all respects" to allow for a meaningful comparison. *Miller-El v. Dretke*, 545 U.S. 231, 247 n.6 (2005). Here, a comparative-juror analysis suggests that each of the State's race-neutral explanations was pretextual, and we therefore conclude that Defendant carried his burden of proving discriminatory intent.

**A.      Ms. Stamps's Silence Was Pretext**

{10}      To determine whether the State's proffered justifications for excluding Ms. Stamps were pretexts for racial discrimination, we begin by examining the plausibility of the justification that the State proffered first. *See id.* at 252 (recognizing that it can be difficult to explain one's reasons for exercising a peremptory strike but that, "when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives"); *id.* ("A *Batson* challenge does not call for a

mere exercise in thinking up any rational basis."). We recognize that it may be constitutionally permissible to use a peremptory strike to exclude a potential juror of a protected class based on an "assertion of unresponsiveness," *State v. Bailey*, 2008-NMCA-084, ¶¶ 19-21, 144 N.M. 279, 186 P.3d 908, so long as that justification is not pretextual. But in this case, the limited record before us compels a conclusion that Ms. Stamps's silence during voir dire was a pretextual reason for excluding her.

{11}   Here, the empaneled jury included three other venire members who never spoke during voir dire.[3] These jurors were H.D. and E.C., who were seated, respectively, as jurors eleven and twelve, and D.J., who was seated as the first alternate. Thus, we are able to conclude that, before the State sought to exclude Ms. Stamps, offering that she had not spoken during voir dire as its reason for doing so, at least two other venire members who had not spoken during voir dire were empaneled as jurors. The State had three peremptory strikes available in seating the twelve-person jury and one peremptory strike available in seating the two alternate jurors. Rule 5-606(D)(1)(c), (3) NMRA. The State used its third and final strike for the twelve-person jury in seating juror eleven, evidencing a willingness to empanel H.D. and E.C., the next two jurors in line. And the State did not use a peremptory

---

[3]We identified these jurors by comparing the audio recording of voir dire with the court reporter's log.

strike in seating the first alternate, evidencing a willingness to empanel D.J. But none of these three venire members (H.D., E.C., and D.J.) spoke during voir dire.[4] Our review of the record thus leads us to conclude that the State's initial justification was pretextual.

**B.      Ms. Stamps's Legal Knowledge Was Also Pretext**

{12}     Having determined that the State's first explanation for excluding Ms. Stamps applied with equal force to other venire members whom the State accepted, we have a good reason to be skeptical of the State's other explanation: her legal knowledge. *See Snyder*, 552 U.S. at 478-86 (declining to sustain a peremptory strike of a Black juror based on one of two proffered race-neutral justifications when the Court had concluded that the other was pretextual because it also applied to non-Black panel members whom the prosecution had not sought to exclude). But this is not the only reason for skepticism here. The State did not offer legal knowledge as an explanation until after defense counsel objected to the State's first explanation, which suggests that Ms. Stamps's legal knowledge was a pretextual justification. *See Miller-El*, 545

---

[4]We decline to treat silence during voir dire as a quality that any other venire member must have for us to consider that member similarly situated to Ms. Stamps. Because the juror questionnaires are not part of the record, we are unable to determine whether any prospective juror other than Ms. Stamps both did not speak during voir dire and had legal knowledge. Although it may have benefitted from that information, our comparative-juror analysis does not require it for two reasons. First, a meaningful comparative-juror analysis does not require perfect similarity among the jurors under comparison. *Miller-El*, 545 U.S. at 247 n.6. Second, Ms. Stamps's silence is attributable in part to the State's failure to ask any questions of her.

U.S. at 245-46 (reasoning that the timing of a proffered justification, given only after defense counsel pointed out that the prosecutor's first justification had been premised on a mischaracterization of what the potential juror said during voir dire, signaled that the justification was pretext).

{13} Our conclusion regarding pretext is also supported by the State's choices about whether to question members of the venire who had legal knowledge. Although several had legal knowledge, the State only questioned some of them, and the State chose not to question Ms. Stamps. During voir dire, the State acknowledged that some members of the venire, such as a probation officer and a former police officer, had "worked within the judicial system" and proceeded to question some of those people about how their work experience might impact their ability to be impartial. Of one potential juror who worked closely with law enforcement, the State asked whether she would be biased in favor of law enforcement witnesses. The State also asked a former police officer in the venire about the officer's potential biases. A prosecutor was also on the panel, and the State asked him whether he could be fair given his "knowledge of the legal system." Although the State raised a concern about Ms. Stamps's legal knowledge, it did not ask her a single question. *Cf. Miller-El*, 545 U.S. at 245 (noting that prosecutors did not question further non-Black potential jurors about their self-reported disavowal of the death penalty whereas they "expressed apprehension" about one Black potential juror who expressed his

approval of the death penalty). This contrasts with the State's conduct during voir dire with respect to other potential jurors who also had legal experience. The State's disparate questioning suggests that its concern about legal knowledge is pretext for discrimination. *See Goode*, 1988-NMCA-044, ¶ 12; *Flowers*, 139 S. Ct. at 2249.

{14}     Finally, we note that the State did not know anything about the nature or extent of Ms. Stamps's legal knowledge that would have given it reason to doubt her qualifications to serve or that would have suggested that her service would have been detrimental to the State. As the district court recognized, the parties knew from Ms. Stamps's juror questionnaire only "that her major area of study was paralegal studies"; they did not know whether she had completed those studies or anything about her work experience. In our view, an indeterminate amount of paralegal training in an unknown area of the law in no way suggests that a juror is unqualified or biased. *See Batson*, 476 U.S. at 91 (explaining that peremptory challenges "traditionally have been viewed as one means of assuring the selection of a qualified and unbiased jury").

{15}     Because the record in this case gives us several reasons to doubt that the State excluded Ms. Stamps because of her legal knowledge, we conclude that the justification was pretext. We next ask whether the exclusion of Ms. Stamps was motivated in substantial part by racial discrimination. *Flowers*, 139 S. Ct. at 2244.

11

## C.     The Circumstances Require Reversal

{16}     The State's reliance on "pretextual explanation[s] naturally gives rise to an inference of discriminatory intent." *Snyder*, 552 U.S. at 485. The State argues that it could not have had discriminatory intent because the prosecutor had not noticed Ms. Stamps's race when he exercised the challenged peremptory strike. But the law ordinarily does not recognize claims of ignorance in this context. "[A] prosecutor's bald assertion that he or she did not know the [stricken] panel member's race" is not an explanation for exercising a peremptory strike and thus generally "should have no effect on the court's assessment of the nature of the state's use of its peremptory challenges." *Goode*, 1988-NMCA-044, ¶ 20. However, in *Goode*, we recognized an exception to this general rule. *Goode* involved "an unusual factual situation" in which it was "manifestly reasonable" that the prosecutor lacked knowledge of the panel member's race, and that "militate[d] against a determination that the challenge was racially motivated." *Id.* We think *Goode* is distinguishable.

{17}     In *Goode*, "the unusual fact that the prosecutor, defense counsel and the trial judge all failed to recognize [the stricken juror's race]" "buttressed" the Court's holding that the state had not given a pretextual explanation for using a peremptory strike to exclude the only Black person in the venire. *Id.* ¶¶ 2, 19-20. But the Court explained that in a case involving "some evidence that similarly-situated [Black and non-Black] panel members were treated differently, [the Court] could conclude that

12

a peremptory challenge exercised without questioning a [Black] panel member was a mere pretext for a racially-motivated exclusion." *Id.* ¶ 19. As we have explained, this is such a case. And, in light of the evidence that the prosecutor gave a pretextual justification for excluding Ms. Stamps *after* defense counsel identified Ms. Stamps's race in raising a *Batson* challenge, we do not think it matters whether the prosecutor knew Ms. Stamps's race when he exercised the peremptory strike. Even if we credit the prosecutor's assertion that he did not know Ms. Stamps's race when he first sought to exclude her, we are in no position to reject the claim of discrimination where the State, once made aware of Ms. Stamps's race, relied on pretext to justify the peremptory strike.

{18} In sum, because Defendant made a prima facie case of discriminatory motive and because the only race-neutral justifications that the State has offered are pretextual, purposeful discrimination is the presumptive explanation for striking Ms. Stamps. *Cf. Bustos*, 2016-NMCA-018, ¶ 43 (reasoning that "[t]here may have been proper, race-neutral reasons why [the proponent of a peremptory strike] wanted another juror 'further down the line'" but that the record "fail[ed] to disclose what those reasons might have been," leaving this Court no "constitutionally permissible, race-neutral reason[]" for affirming the peremptory excusal of a prospective juror of a protected class). Absent any other explanation for the State's use of a peremptory strike against the only prospective Black juror, we hold that the peremptory excusal

of Ms. Stamps violated equal protection principles and that Defendant's conviction must be reversed.

**CONCLUSION**

{19}    We reverse and remand for a new trial.

{20}    **IT IS SO ORDERED.**

_____
**ZACHARY A. IVES, Judge**

**WE CONCUR:**

_____
**KRISTINA BOGARDUS, Judge**

_____
**JACQUELINE R. MEDINA, Judge**

14