This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41390**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JOHN FIERRO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Van Snow, Deputy Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** The first trial of Defendant John Fierro ended in a mistrial during closing argument when the district court determined the prosecutor commented upon Defendant's silence. The State retried Defendant and the jury ultimately convicted him of six of the seven counts on which he had been charged, all of which were various infractions or crimes related to an encounter with police stemming from Defendant's use of a bicycle at night without required lighting. On appeal, Defendant raises two issues,

arguing (1) his second trial violated his right to be free from double jeopardy, and (2) the State exercised a peremptory challenge in a racially discriminatory manner. We affirm.

**DISCUSSION**

**I.      Retrial Was Not Barred by Double Jeopardy**

**{2}**      During closing argument at Defendant's first trial, the prosecutor played lapel videos from the two arresting officers. Afterward, the prosecutor remarked:

> They would have you believe that [the officer] had it out for [D]efendant or was just going overboard, but he didn't actually do anything other than try to use the soft hand techniques to detain [Defendant]. We don't hear from [Defendant] any sort of exclamation or complaining that the officers were attacking him, [the officer] wasn't wailing on him.

Defense counsel immediately objected and moved for a mistrial, arguing that the prosecutor made an improper comment on Defendant's silence. The district court agreed and granted Defendant's request for a mistrial. On appeal, Defendant argues that the prosecutor's conduct constituted prosecutorial misconduct warranting a bar to retrial under the double jeopardy clause of the New Mexico Constitution. *See* N.M. Const. art. II, § 15.

**{3}**      "Not every prosecutorial error that leads to a mistrial or reversal will justify barring a retrial." *State v. Foster*, 1998-NMCA-163, ¶ 21, 126 N.M. 177, 967 P.2d 852 (stating that the bar to retrial "is a remedy to be used sparingly"). "[T]he bar of double jeopardy [is] an exceedingly uncommon remedy" that "applies only in cases of the most severe prosecutorial transgressions." *State v. McClaugherty*, 2008-NMSC-044, ¶ 25, 144 N.M. 483, 188 P.3d 1234 (internal quotation marks and citations omitted). Our Supreme Court has determined that prosecutorial misconduct rises to this level only "when [(1)] improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial, and [(2)] if the official knows that the conduct is improper and prejudicial, and [(3)] if the official either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal." *State v. Breit*, 1996-NMSC-067, ¶ 32, 122 N.M. 655, 930 P.2d 792.

**{4}**      While the parties dispute all three of the *Breit* factors, we focus our analysis on the third factor because it is dispositive. *See State v. Haynes*, 2000-NMCA-060, ¶ 6, 129 N.M. 304, 6 P.3d 1026 (concluding that the absence of the third factor was dispositive and it was unnecessary to analyze the first two *Breit* factors). Defendant does not contend that the prosecutor acted with an intent to provoke a mistrial, and therefore, we address only whether "the prosecutor acted in willful disregard of the certainty of mistrial, retrial, or reversal or of the defendant's right to a fair trial." *See Breit*, 1996-NMSC-067, ¶ 40.

**{5}** "Willful disregard connotes a conscious and purposeful decision by the prosecutor to dismiss any concern that his or her conduct may lead to a mistrial or reversal." *State v. Amador*, 2024-NMSC-006, ¶ 24, 546 P.3d 1277 (alteration, internal quotation marks, and citation omitted). "A prosecutor acts with 'willful disregard' of a possible mistrial or reversal when he or she is actually aware, *or is presumed to be aware*, of the potential consequences of his or her actions." *Id.* (internal quotation marks and citation omitted). The prosecutor's actions must be evaluated objectively "in light of the totality of the circumstances of the trial." *Id.* (internal quotation marks and citation omitted); *Breit*, 1996-NMSC-067, ¶ 40 (same). "[T]he threshold of willful disregard was intended to be high—double jeopardy will rarely bar reprosecution if the misconduct is an isolated instance during the course of an otherwise fair trial." *Amador*, 2024-NMSC-006, ¶ 24 (internal quotation marks and citation omitted).

**{6}** Defendant argues that "[a]lthough an isolated instance of misconduct will generally not satisfy this factor, sometimes a [single] act of misconduct can be so extreme as to bar retrial." Our Supreme Court acknowledged as much in *McClaugherty*, the principal case upon which Defendant relies. *See* 2008-NMSC-044, ¶¶ 60, 70. In *McClaugherty*, an experienced prosecutor attempted to cross-examine the defendant, who was on trial for murder, with two alleged witness statements. *Id.* ¶¶ 41, 47-48. Those alleged statements contained highly prejudicial hearsay—that the defendant admitted to the shooting and bragged about it—that was not admissible under any hearsay exception. *Id.* ¶¶ 10, 66. On remand for a new trial, defense counsel had the chance to examine the witnesses' statements and discovered that the prosecutor had "grossly misrepresented the content of those statements" during trial. *Id.* ¶¶ 10-13. Defendant moved to bar further prosecution on that basis. *Id.* ¶ 11.

**{7}** When discussing why this conduct amounted to "willful disregard" under the third *Breit* factor, the *McClaugherty* Court observed that "we have a single incident of misconduct at trial: [the prosecutor's] introduction of nonexistent evidence at worst, or at best, inadmissible hearsay through his cross-examination questions." *Id.* ¶ 60; *see also id.* ¶ 41 (noting that the prosecutor was either relying on material that had never been produced to the defense, or otherwise "introduced two specific hearsay statements that simply did not exist"). The Court noted that the experienced prosecutor was presumed to know the rules of evidence, *id.* ¶ 66, that it is well known that the practice of bringing inadmissible material to the attention of the jury during cross-examination is prohibited, *id.* ¶¶ 66-68, and that the prosecutor's own testimony established that he "(1) interviewed a crucial witness without her lawyer of record present; (2) did not inform the defense that he had conducted an interview with this witness; (3) never intended to call this witness at trial; and (4) introduced the content of this interview through his cross-examination questions to Defendant." *Id.* ¶ 70. Based on the totality of these circumstances, the Court concluded that the prosecutor's "acts at the trial were executed with 'willful disregard' of the potential for a mistrial, retrial or reversal and that the third [*Breit*] prong was met." *Id.*

**{8}** To date, *McClaugherty* appears to be the only case in which a single act of prosecutorial misconduct has sufficed to bar retrial under the *Breit* test. With this context

in mind, we turn to Defendant's argument that the prosecutor's conduct in this case—a single comment during closing argument—demonstrates willful disregard. Defendant acknowledges that the prosecutor's comment was made "in response to evidence suggesting that [one of the arresting officers] had acted aggressively and unprofessionally in the altercation with [Defendant]." During closing, the prosecutor played video of the stop and then began speaking to the jury about what the video showed, focusing on how Defendant and the officers interacted and who was the aggressor. When the prosecutor said, "We don't hear from [Defendant] any sort of exclamation or complaining that the officers were attacking him, um, [and the officer] wasn't wailing on him," the defense objected, arguing that the prosecutor's comment shifted the burden onto Defendant and it was an improper comment on silence. During the bench conference following Defendant's objection, the prosecutor indicated that she was attempting to explain what happened in the video.

**{9}** Based on the limited factual record before us[1] and assuming but not deciding that the prosecutor's single comment was improper,[2] it appears to have been an "isolated instance during the course of an otherwise fair trial." *See Breit*, 1996-NMSC-067, ¶ 33. The prosecutor's comment called attention to Defendant's pre-arrest, pre-*Miranda* silence and served only to point out to the jury what they could have deduced for themselves after watching the video—how the parties acted and what they said (or did not say). This stands in sharp contrast to the prosecutor's egregious conduct in *McClaugherty*—a deliberate effort to expose the jury to clearly inadmissible and prejudicial evidence through cross-examination, with full knowledge of the impropriety of the procedure and the fact that the statements had either never been produced to the defense or never existed in the first place. *See McClaugherty*, 2008-NMSC-044, ¶¶ 40, 67, 72.

**{10}** To the extent the prosecutor's comment in this case was error, it does not appear to rise to the high level of "willful disregard" set forth in *Breit* and demonstrated in *McClaugherty*. Accordingly, we conclude that Defendant's retrial was not barred by double jeopardy.

## II.     The Prosecutor's Peremptory Challenge Did Not Violate *Batson*

**{11}** Defendant contends that the State violated his constitutional rights by exercising a peremptory challenge to strike a Native American man from the jury pool during voir dire for his second trial. Defendant maintains that the district court erred in accepting the prosecutor's explanation for exercising a peremptory challenge because the justification

---

1Although the district court granted Defendant's request for a mistrial, Defendant did not object below to retrial on prosecutorial misconduct grounds, and as a consequence, the district court did not have the opportunity to make factual findings regarding the prosecutor's conduct. *See, e.g., McClaugherty*, 2008-NMSC-044, ¶¶ 11-18; *Breit*, 1996-NMSC-067, ¶ 6.

2On the record before us, we question whether a mistrial was necessary on the basis articulated by the district court. *See State v. Costillo*, 2020-NMCA-051, ¶ 11, 475 P.3d 803 ("We agree with those courts that have concluded that a defendant's prearrest, pre-*Miranda* silence, *once invoked*, may not be admitted as substantive evidence of guilt by a prosecutor at trial." (emphasis added)). Nevertheless, it is not necessary to reach this issue given that the third *Breit* factor is not satisfied.

was pretextual. We conclude Defendant has not carried his burden of proving purposeful discrimination under *Batson v. Kentucky*, 476 U.S. 79 (1986).

**{12}** The State asked Potential Juror Eight, a Native American man, what he thought about the nature of the charges against Defendant. Potential Juror Eight responded, "I'm not sure. There was maybe six of them? I didn't really pay attention. I wasn't quite sure what they were. I don't know the severity. I don't know, I don't know much about, you know, that type of uh, those charges." When asked by the State if he could pay attention for the rest of the case, Potential Juror Eight responded that he definitely could and continued to answer other questions from defense counsel. The prosecutor used a peremptory challenge to strike Potential Juror Eight.

**{13}** Defense counsel raised a *Batson* challenge, asking the State to provide a justification for striking a Native American juror. The prosecutor responded, "The State is striking him because the first comment off the bat that he said was that he wasn't really paying attention, which is a red flag to the State in this kind of case, we need jurors who are going to pay attention." Defense counsel countered, arguing that the prosecutor's justification was pretextual because she asked if Potential Juror Eight could pay attention, and he said that he would. Defense counsel noted that it was conceivable that someone new to jury service would get distracted. The district court overruled the objection without further discussion and denied Defendant's *Batson* challenge.

**{14}** "It is well established that the state may not, during the jury selection process, use its peremptory challenges to exclude otherwise unbiased and well-qualified individuals solely on the basis of their race." *State v. Dorado*, 2019-NMCA-037, ¶ 5, 444 P.3d 1083 (alteration, internal quotation marks, and citation omitted). Both the United States Constitution's and the New Mexico Constitution's equal protection clauses prohibit racial discrimination in the exercise of peremptory strikes during jury selection. *See id.*; *see also* U.S. Const. amend. XIV, § 1; N.M. Const. art. II, §§ 14 (right to trial by an impartial jury), 18 (equal protection clause).

**{15}** To determine whether peremptory strikes have been exercised in a racially discriminatory manner, New Mexico courts apply a three-part test adopted from the United States Supreme Court's decisions in *Batson*, 476 U.S. 79, and *Purkett v. Elem*, 514 U.S. 765 (1995). *See Dorado*, 2019-NMCA-037, ¶ 5. "First, the opponent of a peremptory challenge bears the burden to establish a prima facie case indicating that the peremptory challenge has been exercised in a discriminatory way (step one)." *State v. Salas*, 2010-NMSC-028, ¶ 31, 148 N.M. 313, 236 P.3d 32. "If the opponent of the peremptory challenge successfully makes a prima facie showing, then the burden shifts to the proponent of the challenge to come forward with a race or gender-neutral explanation (step two)." *Id.* ¶ 32. If the proponent provides a race or gender-neutral explanation, "the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial or gender discrimination." *Id.* (alteration, internal quotation marks, and citation omitted).

**{16}** "We review a district court's factual findings on a *Batson* challenge under a deferential standard of review . . . [because] the district court has a responsibility to (1) evaluate the sincerity of both parties, (2) rely on its own observations of the challenged jurors, and (3) draw on its experience in supervising voir dire." *Bustos v. City of Clovis*, 2016-NMCA-018, ¶ 29, 365 P.3d 67 (internal quotation marks and citation omitted). "However, the *Batson* issue ultimately is a constitutional one which we review de novo." *Bustos*, 2016-NMCA-018, ¶ 30.

**{17}** At the first step of *Batson*, the State offered a justification before the trial court could make findings establishing a prima facie showing of purposeful discrimination. We accordingly assume that Defendant satisfied his burden at *Batson* step one and proceed to steps two and three. *See State v. Gerald B.*, 2006-NMCA-022, ¶ 32, 139 N.M. 113, 129 P.3d 149 (holding that the preliminary issue of whether the defendant established a prima facie case of discrimination became moot "[b]ecause the [s]tate proceeded past the first step of the *Batson* analysis without questioning [the opponent's] prima facie showing").

**{18}** Continuing on to step two, we determine whether the State's explanation for striking Potential Juror Eight—failing to pay attention—is race-neutral. "The only inquiry at step two is the facial validity of the proffered explanation, an issue determined on the basis of whether a discriminatory intent is inherent in the explanation." *Dorado*, 2019-NMCA-037, ¶ 8 (internal quotation marks and citation omitted). "The reason must be sufficiently specific to allow the party challenging the strike to exercise its right to refute the stated reason or otherwise prove purposeful discrimination." *Bustos*, 2016-NMCA-018, ¶ 41 (internal quotation marks and citation omitted). The reason must also "provid[e] a factual basis for a court to review for legitimacy." *Id.*

**{19}** New Mexico courts have recognized that it is permissible to use peremptory strikes based on "an assertion of unresponsiveness . . . so long as th[e] justification is not pretextual." *State v. Blanton*, 2023-NMCA-028, ¶¶ 9-10, 528 P.3d 699 (internal quotation marks and citation omitted); *see id.* (concluding that the prosecutor's proffered reason that the potential juror never spoke during voir dire was race-neutral but pretextual); *see also Salas*, 2010-NMSC-028, ¶ 38 (affirming peremptory strike of juror who fell asleep during jury selection); *State v. Bailey*, 2008-NMCA-084, ¶¶ 13-21, 144 N.M. 279, 186 P.3d 908 (holding that the prosecutor's explanation that three stricken jurors were unresponsive was racially neutral and specific). In this case, the prosecutor expressed concern that given the multi-count criminal complaint, it was imperative to seat jurors who could pay attention, and Potential Juror Eight admitted that he was not paying attention when the trial court judge read the charges against Defendant. Defendant concedes that the prosecutor's proffered explanation was race-neutral on its face. We agree with the parties that the State's justification is facially neutral and specific. Consequently, we see no error in the second step of the *Batson* analysis.

**{20}** The burden rests with Defendant at the third step of the *Batson* analysis to prove that the prosecutor's reason was pretextual. *See Dorado*, 2019-NMCA-037, ¶ 13 ("A peremptory challenge that is found to be valid on its face stands unless the defendant

comes forward with a refutation of the stated reason—e.g., by challenging its factual basis—or proof of purposeful discrimination by the prosecutor." (internal quotation marks and citation omitted)). "Where the defendant does not come forward with evidence showing the prosecutor's explanation was without basis in fact or that the prosecutor purposefully discriminated against the juror based on race, a district court does not err in finding that a peremptory challenge is valid and not discriminatory." *Id.* (alteration, internal quotation marks, and citation omitted).

**{21}** Defendant argues that the State's explanation that Potential Juror Eight admitted that he was not paying attention was pretextual because Potential Juror Eight later confirmed that he could pay attention. Defendant asserts that "[i]f the State felt it truly justified excusing [Potential Juror Eight], the State would have challenged him for cause, but did not." As stated earlier, peremptory strikes are permissible so long as they are not a pretext for racial discrimination. Therefore, "[r]ace-neutral reasons for peremptory strikes do not need to rise to the same level needed to justify a challenge for cause." *Bustos*, 2016-NMCA-018, ¶ 45. Although Defendant suggests that the juror could have paid attention, such theorizing is insufficient to refute the prosecutor's stated reason for exercising the peremptory challenge. *See State v. Chavez*, 2009-NMCA-089, ¶ 5, 146 N.M. 729, 214 P.3d 794 (holding that the defendant failed to refute the prosecutor's challenge by faulting the prosecutor for not asking further questions regarding juror's impartiality and theorizing that the juror could have been impartial). Indeed, the State's reason was based on Potential Juror Eight's own statement that he had not paid attention earlier in jury selection.

**{22}** Defendant also fails to establish facts indicative of purposeful racial discrimination. *See State v. Jim*, 1988-NMCA-092, ¶ 7, 107 N.M. 779, 765 P.2d 195 ("The facts and circumstances surrounding the use of the challenge must raise the inference that the prosecution used the peremptory challenge to exclude persons from the jury on account of race."). As the State points out, Defendant did not show that Potential Juror Eight was the only Native American juror or that other Native American venire members were treated differently, nor does Defendant offer evidence demonstrating that the State failed to strike other distracted jurors. *See, e.g., State v. Wilson*, 1994-NMSC-009, ¶ 28, 116 N.M. 793, 867 P.2d 1175 (stating that purposeful discrimination may be shown based on "the treatment of members of the excluded group versus other potential jurors, the extent of voir dire of the excluded jurors, whether the explanation is related to the particular case, and whether a past pattern of challenges against members of a particular racial group exists"); *Bustos*, 2016-NMCA-018, ¶ 49 (concluding, in light of the total selection process, the defendants' challenges established a "pattern of conduct and a motive to keep Hispanics off of the jury"); *State v. Guzman*, 1994-NMCA-149, ¶¶ 19-20, 119 N.M. 190, 889 P.2d 225 (finding a *Batson* violation where the same factors that were identified to strike Hispanics were not applied to strike Anglos); *State v. Goode*, 1988-NMCA-044, ¶ 14, 107 N.M. 298, 756 P.2d 578 (stating that a prosecutor's proposed reason for striking a juror may also be pretextual when the prosecutor strikes jurors for a reason that does not appear to be related to the case). Given the absence of such evidence, we conclude that Defendant failed to demonstrate that the prosecutor's explanation was without basis in fact or that

the prosecutor purposefully discriminated against the juror based on race. Therefore, the district court did not err in overruling Defendant's *Batson* challenge.

**CONCLUSION**

**{23}** For the foregoing reasons, we affirm the judgment of the district court.

**{24} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**KATHERINE A. WRAY, Judge**